Curtis J. WRIGHT, Plaintiff-Appellant,

v.

WESTERN ELECTRIC COMPANY, INC., Defendant-Appellee.

No. 81–1004.

United States Court of Appeals, Fifth Circuit.

Dec. 28, 1981.

E. Brice Cunningham, Dallas, Tex., for plaintiff-appellant.

Thompson & Knight, Stephen F. Fink, Dallas, Tex., for defendant-appellee.

Before THORNBERRY and TATE, Circuit Judges, and VERON *, District Judge.

VERON, District Judge:

The plaintiff, Curtis J. Wright, brought suit against Western Electric Company, Inc., alleging that they discriminated against him on racial grounds by refusing to hire him as an electronics technician in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. Section 2000e et seq. (1976). The district court found for the defendant, holding that the plaintiff had failed to establish a prima facie case of racial discrimination and, in any event, that the plaintiff had failed to carry his ultimate burden of persuasion that discrimination had in fact occurred.

## I. THE FACTS

Curtis J. Wright is a black male who completed a two-year course of study in basic electronics at the United Electronics Laboratories in Charleston, South Carolina and received an electronic technology diploma in 1966. He was then employed by Collins Radio,[1] located in Dallas, Texas, as an electronic test technician. After working in this position for approximately four years, he was transferred into the computer area, where he worked as a computer test technician until he resigned his position at Collins in July of 1978.

The paths of plaintiff and defendant crossed in January of 1977 when Mr. Wright became aware that Western Electric was seeking applicants for the position of electronic technician, to be employed at the company's Dallas Works Plant in Mesquite, Texas. At this time, Western Elec-

tric was advertising in the local media for an "electronic technician," to be paid a starting salary of $6.91 per hour. No further job description was supplied. On January 12, 1977, Mr. Wright filled out an application for employment with Western Electric at its Mesquite plant and was interviewed several days later by three Western Electric employees: Jack Spears, head of the personnel department; Paul R. Wilson and Don C. Woods, engineers at the Dallas Works Plant. The job description furnished to these employees provided that, as a prerequisite to employment, the applicant must have completed an accredited trades training course or possess equivalent knowledge and skill acquired by means of practical experience. Mr. Wright's application listed his training at the United Electronics Laboratories, and detailed his experience with Collins Radio in the computer field.

Spears, Woods, and Wilson testified that they were not favorably impressed with Mr. Wright's abilities at the initial interview; nonetheless, a second interview was scheduled for Mr. Wright with Mahlon Cantrell, a supervisor of the engineering department at the Dallas Works Plant. The trial court found that, as a result of these interviews, a determination was made by Western Electric personnel that Mr. Wright lacked a sufficient depth of knowledge and experience in the field of maintenance and service of production testing equipment, so as to render him unqualified for the available position. The Western Electric employees who conducted these interviews testified that they found Mr. Wright's background to be primarily in the field of communications equipment, as opposed to the kind of production and testing equipment, especially minicomputers, that the technicians to be employed at the plant would be required to maintain, and that he lacked experience in independent maintenance and service work, which they considered essential to an adequate performance.

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. Collins Radio is now known as Rockwell International.

Although a decision had already been made not to extend Mr. Wright an offer of employment, the company had a policy of maintaining applications on file for a period of one year, without notifying applicants of their rejection. Mr. Wright testified that he made repeated attempts to determine the status of his application, but was unable to find out that he would not receive the job until sometime in October of 1977, when he was told by an individual in the Western Electric personnel department that he lacked the necessary experience for the job. During the period following Mr. Wright's application, Western Electric continued to advertise for applicants for the position of electronic technician, and between February 7, 1977 and November 7, 1977, five white males and one Hispanic male were hired in the position Mr. Wright sought. Mr. Wright filed a charge of discrimination against Western Electric with the Equal Employment Opportunity Commission on November 21, 1977, and the EEOC issued Mr. Wright his right-to-sue letter on March 24, 1978. Mr. Wright filed the instant suit on April 6, 1978.

## II. THE APPLICABLE LAW

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth a series of suggested guidelines as to the allocation of the burden of proof in a Title VII suit. The plaintiff must carry the initial burden of establishing a prima facie case by a preponderance of the evidence. This may be accomplished by showing: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824. If the plaintiff succeeds in establishing a prima facie case, the burden of production

then shifts to the defendant employer to articulate "some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. Once this is accomplished, the plaintiff must then be given a fair opportunity to show by a preponderance of the evidence that the employer's stated reasons for the rejection were in fact a pretext for a racially discriminatory decision. *Id.* at 804, 93 S.Ct. at 1825.

The Supreme Court further clarified the nature of the burdens to be carried by the plaintiff and defendant in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). There the Court reiterated that "(t)he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. at 1094.[2]

. . . Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a

2. Citing the dissent of Stevens, J., in *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, n.2, 99 S.Ct. 295, 296, n.2, 58 L.Ed.2d 216 (1978); *id.*, at 29, 99 S.Ct. at 297; 9 J. Wigmore, Evidence Sec. 2489 (3d ed. 1940).

judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. . . . *Id.* at 254–256, 101 S.Ct. at 1094–95 (footnotes omitted) (citations omitted).

### III. THE STANDARD OF REVIEW

The district court found that the plaintiff failed to establish a prima facie case because he did not prove by a preponderance of the evidence that he was qualified for the position he sought. The lower court went on to hold that, even if the plaintiff had established a prima facie case, the employer had articulated legitimate, nondiscriminatory reasons for its refusal to hire the plaintiff; to-wit, the determination that Mr. Wright did not possess the desired level of knowledge or the appropriate background for the available position. According to the district court, the plaintiff failed to prove by a preponderance of the evidence that the stated reasons given by Western Electric for Mr. Wright's rejection were in fact inspired by a racially discriminatory motive.

 In reviewing the judgment of the lower court, we are mindful that the court of appeal is required to accept the lower court's findings of fact unless they are "clearly erroneous." F.R.C.P. 52(a). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746,

766 (1948).[3] However, the "clearly erroneous" standard is applicable only to findings of subsidiary, as opposed to ultimate facts. *Causey v. Ford Motor Co.*, 516 F.2d 416 (5th Cir. 1975). The appellate court "may reverse free of the clearly erroneous rule where . . . the issue revolves around an ultimate fact question as distinguished from subsidiary fact questions . . ." *Industrial Instrument Corp. v. Foxboro Co.*, 307 F.2d 783 at 786 n.2 (5th Cir. 1962). A finding of discrimination or nondiscrimination is a finding of ultimate fact. *East v. Romine, Inc.*, 518 F.2d 332, 338 (5th Cir. 1975); *Hester v. Southern Railway Co.*, 497 F.2d 1374, 1381 (5th Cir. 1974); *United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 423–24 (5th Cir. 1971). This court must, therefore, make its own determination as to the merits of plaintiff's charge of racial discrimination, while relying on the lower court's findings of fact which are not clearly erroneous. We must further determine whether there are sufficient subsidiary facts to undergird the findings of ultimate fact. *East v. Romine, Inc., supra; Humphrey v. Southwestern Portland Cement Co.*, 488 F.2d 691, 694 (5th Cir. 1974).

### IV. THE PLAINTIFF'S PRIMA FACIE CASE

 With the above principles in mind, we now turn to an examination of the validity of the lower court's ruling. We hold that the district court erred in its finding that Mr. Wright failed to establish a prima facie case of racial discrimination. As required by *McDonnell Douglas v. Green, supra*, Mr. Wright proved that he is a black male, who applied for the job advertised by Western Electric. Western Electric merely specified in their advertisements that they were seeking "electronic technicians." Moreover, Mr. Wright had had the benefit of a two year course in electronics technology, coupled with eleven years experience with Collins Radio, as required by the job description used by Western Electric. He

---

**3.** *See also Chaney v. City of Galveston,* 368 F.2d 774, 776, *East v. Romine, Incorporated,*

518 F.2d 332, 338 (5th Cir. 1975).

was refused employment, and the defendant continued to seek applicants following such refusal. In order to establish a prima facie case, Mr. Wright is not required to prove that he was the *most* qualified applicant for the position, but only that his background was such that he was at least presumptively qualified for the job he sought. *East v. Romine, Inc., supra.* The burden of the plaintiff at this stage of the litigation process is not an onerous one. *Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1094.

## V. THE DEFENDANT'S BURDEN OF PRODUCTION

 Since we find that the plaintiff has successfully established a prima facie case,[4] we must now address the question of whether Western Electric has rebutted this showing by articulating nondiscriminatory reasons for their refusal to hire Mr. Wright. Western Electric alleged that those hired had qualifications superior to Mr. Wright,[5] and that the plaintiff's responses in his two interviews with company personnel indicated a superficial level of knowledge which would be inadequate for the type of unsupervised work required. The defendant asserted, and the trial court found, that Western Electric actively sought minority applicants through advertisement in publications likely to be widely available to minorities, and that the company's percentage of minorities employed was commensurate with the available work force in the Dallas area.[6] Western Electric employees testified that, although Mr. Wright's first interview was unsatisfactory, he was given a second opportunity to demonstrate his abilities in a later interview with Mr. Cantrell, the department head. This evidence was clearly sufficient as a matter of law to rebut the presumption of discrimination raised by plaintiff's prima facie case. Even if Western Electric was incorrect in their assessment of Mr. Wright's capabilities, if the company acted on this belief in making their decision not to hire Mr. Wright, and not on the basis of an impermissible factor such as race, there would be no racial discrimination. *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251 (5th Cir. 1977). It is also unnecessary for the employer to prove that those hired were *more* qualified than the plaintiff for the job. "The employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Texas Department of Community Affairs v. Burdine, supra.*

## VI. THE PLAINTIFF'S ULTIMATE BURDEN

 Therefore, Mr. Wright was faced with the task of proving by a preponderance of the evidence that the reasons given by Western Electric for his rejection were in fact a mere pretext for accomplish-

---

**4.** *McDonnell Douglas Corp. v. Green, supra.*

**5.** The trial court found as a matter of fact that all persons hired by Western Electric as electronics technicians in 1977 either had at least two years of college education or extensive job-related training courses in electronics. All likewise indicated on their applications or resumes significant work or training experience in independent repair and service of the general types of equipment that the technicians at the Dallas Works are required to maintain, service, and repair. Each of the persons hired was found qualified by engineering personnel at the Works and all were still employed and performing satisfactorily. Several had been promoted; one was then an engineer.

**6.** The lower court also found that during 1977, the Dallas Works consistently employed from 19% to 23% blacks in its workforce, even though blacks composed only 14% of the total available workforce in the geographical area from which the Works draws employees. In 1977, 21.5% of the persons hired overall at the Dallas Works were black, again compared with a workforce availability of only 14%. In the "craftsworker" EEOC category into which this particular job falls, the company hired only 15 employees in 1977; one was black. Only 14 blacks applied for craftsworker positions, however, 491 whites applied. Thus, the "selection rate" for black craftsworkers was higher than that for white craftsworkers. Additionally, black craftsworkers make up only 6.7% of the overall craftsworker workforce availability in the area from which the Dallas Works draws employees. In 1977, as noted above, the percentage of craftsworkers hired at the Dallas Works who were black was 6.7%.

ment of a racially discriminatory purpose. This court is unable to find that he has carried that burden. Counsel for the plaintiff argues that since Mr. Wright answered all questions propounded by his interviewers, this indicated that he possessed the desired level of ability. However, the interviewers repeatedly testified that Mr. Wright responded unsatisfactorily to questions designed to test his problem-solving abilities. The mere fact that an answer is given is of no importance if the answer is incorrect or incomplete. Mr. Wright further alleges that, of the six men hired for the job, all but one were required to attend a training program after their employment began, to bring their performances up to the desired level. However, the lower court did not find that this fact indicated that the refusal to hire Mr. Wright was racially motivated, and we must agree. The training program was designed to further acquaint the employees with new procedures at the Dallas plant, not to teach basic skills with which they were already required to be familiar.

## VII. CONCLUSION

In conclusion, while we must disagree with the district court's finding that the plaintiff failed to establish a prima facie case, the end result of our determination on the ultimate fact of discrimination *vel non* remains the same. The defendant has provided sufficient nondiscriminatory reasons for its rejection of the plaintiff, and the plaintiff has failed to prove by a preponderance of the evidence that the proffered reasons were a mere ruse for accomplishment of a discriminatory objective. Since the plaintiff has failed to carry his ultimate burden of persuasion as to the existence of discrimination, we must affirm.

AFFIRMED.