UNITED STATES of America,
Plaintiff-Appellant,

v.

Arnold ALBERT, Defendant-Appellee.

No. 80–2122.

United States Court of Appeals,
Fifth Circuit.

May 14, 1982.

John E. Murphy, Asst. U. S. Atty., San Antonio, Tex., Robert J. Erickson, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Samuel Bayless, San Antonio, Tex., for defendant-appellee.

Before THORNBERRY, REAVLEY and RANDALL, Circuit Judges.

THORNBERRY, Circuit Judge:

Dr. Arnold Albert, a licensed physician, was indicted under Title 21 U.S.C., sections 841(a)(1) and 846 for conspiring to dispense Schedule II controlled substances "not in the course of professional practice and not for a legitimate medical purpose." The indictment also charged codefendant James H. Cleveland—a pharmacist—and "other persons to the grand jurors known and unknown."[1] The information for the indictments came from one of Dr. Albert's former patients, Doris Francis, and her husband, Herman Francis, both of whom had been receiving illegally prescribed drugs from the codefendants in return for stolen goods that the Francises obtained elsewhere. The Francises had participated in this trading arrangement for approximately one year, but they eventually agreed to cooperate with law enforcement officers in indicting and prosecuting Dr. Albert and Cleveland.

After a joint trial before a jury, Dr. Albert was convicted on all charges. Codefendant Cleveland, however, was acquitted. The trial court therefore granted Dr. Albert's motion for acquittal, relying on the common law rule that a defendant cannot be convicted of conspiracy when his codefendants have all been acquitted. The government now appeals this decision, and Dr. Albert alternatively challenges various alleged errors in the jury's conspiracy verdict.

## I. The Common Law Rule

The government contends that the trial court erred by relying on the common law rule that a defendant cannot be convicted of conspiring with himself alone. This traditional rule clearly holds that "[a] conspiracy cannot be committed by a single individual acting alone.... [W]here all but one of the charged conspirators are acquitted, the verdict against the one will not

stand." *Herman v. United States*, 289 F.2d 362, 368 (5th Cir. 1961), *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961).

■ Although the traditional rule is the current law of this Circuit, the government argues that its rationale has been undermined by two recent cases which compel its abandonment. These two cases—*United States v. Espinosa-Cerpa*, 630 F.2d 328 (5th Cir. 1980), and *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980)—held that when coconspirators (or principal and accomplice) are tried in separate trials, the acquittal of one cannot be used as nonmutual collateral estoppel to require the acquittal of the other. Underlying these cases is the recognition that inconsistent jury verdicts can be tolerated because of the jury prerogative to acquit for any reason and because of the ability of appellate evidentiary review to guarantee the accuracy of an inconsistent conviction. As the government notes, these reasons apply with almost equal force against the common law rule for a single trial. Indeed, a panel of this Court in *Espinosa-Cerpa* specifically questioned the continued vitality of the traditional rule. *See* 630 F.2d at 331–33 & n.5. But these arguments are more properly directed to this Court sitting en banc, not to a panel bound to follow Circuit precedent. We are not at liberty to alter the law of this Circuit until our en banc Court or the Supreme Court so instruct us.

## II. "Other Conspirators"

■ Even if the traditional rule applies, the government argues that the trial court should have allowed the jury's conspiracy verdict to stand, because the evidence showed that Dr. Albert conspired with "other persons to the grand jurors known and unknown."[2] It is true that the traditional

---

1. In addition, the indictment charged the codefendants with substantive counts of unlawfully dispensing Schedule II controlled substances. Dr. Albert appealed his conviction on these charges in a separate docket; another panel of this Court affirmed the conviction in *United*

*States v. Albert*, 663 F.2d 105 (5th Cir. 1981) (unpublished opinion).

2. After the parties had filed their initial briefs arguing the government's "other conspirators" theory, this Court requested supplemental briefs to ensure that this alternative theory had

rule bars a conspirator's convictions only when *all* other coconspirators are acquitted. As the government correctly observes, "where named coconspirators are acquitted, 'a person can be convicted of conspiring with persons whose names are unknown as long as the indictment asserts that such other persons exist and the evidence supports their existence [and complicity].'" *Espinosa-Cerpa, supra*, 630 F.2d at 331 n.2, *quoting United States v. Klein*, 560 F.2d 1236, 1242 (5th Cir. 1977), *cert. denied*, 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978).

Here, the indictment charged Dr. Albert for conspiring with Cleveland and "other persons to the grand jurors known and unknown." But the trial court stated in its Order on Post Trial Motions that Cleveland was "the only other co-conspirator whose existence was disclosed by the evidence." The question, therefore, is whether the trial court clearly erred in making this finding—in other words, whether, although there is evidence to support the trial court's finding, a review of the entire evidence leaves the definite and firm conviction that a mistake has been committed. *See Wright v. Western Electric Co.*, 664 F.2d 959, 963 (5th Cir. 1981), *citing United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948). After examining the evidence, we must answer the question in the affirmative and reverse the trial court's grant of Dr. Albert's motion for acquittal.

 We think that the evidence clearly shows the conspiratorial participation of at least two persons—the Francises—and of perhaps a third—Beverly Hannah, one of Cleveland's employees. At a pretrial hearing, the government stated that the Francises and Beverly Hannah were the unnamed coconspirators mentioned in the indictment, and the evidence presented at trial proved beyond a reasonable doubt their membership in a criminal conspiracy with Dr. Albert. As the evidence shows, Dr. Albert, Cleveland, and the Francises met in October 1978 and discussed the possibility of trading merchandise for the drugs that Dr. Albert had been prescribing for Doris Francis. Shortly thereafter, the Francises brought a television set to Albert's office, in return for sixty Preludin pills and forty-eight Tuinal capsules.[3] This type of trading continued for several months, during which time the Francises obtained several hundred capsules of Preludin and Tuinal; they bartered such diverse goods as a shotgun, handguns, and television sets (including sets with the identification numbers removed). None of these trades for merchandise were entered in Dr. Albert's medical records.

---

been raised before the trial court. We find that it was so raised and is thus properly presented on appeal.

As noted above, the indictment clearly charges a conspiracy with "other persons to the grand jurors known and unknown." At a pretrial hearing on these charges, the government disclosed that Herman and Doris Francis and Beverly Hannah, one of Cleveland's employees, were the unnamed conspirators. The proof at trial showed beyond doubt that the Francises (and perhaps Ms. Hannah) had conspired with Dr. Albert to dispense drugs unlawfully—indeed, the heart of the government's case came from the Francises' inside information about their participation in the conspiracy. And Dr. Albert's post-trial motion for acquittal, together with the supporting memorandum of law, specifically alleged the insufficiency of the evidence to prove a conspiracy with persons other than Cleveland; the supporting memorandum even undertook the task of distinguishing the cases where the evidence did show other conspirators. Finally, the government's

response to Dr. Albert's motion for acquittal stated that "the fact that the jury returned a not guilty [verdict] with respect to the alleged coconspirator and codefendant, James Hollis Cleveland, is immaterial with respect to the guilt of the defendant"—presumably because the defendant could still be found guilty of conspiring with others. All of these incidents served to present the issue to the trial court, so that it can now be raised on appeal as well.

3. Preludin is an amphetamine-like substance with a limited anorectic effect. When combined with a regulated diet, it is useful in weight control programs, but only for a short period of time. The Physicians Desk Reference recommends its effective use as a hunger suppressant for no more than a few weeks.

Tuinal is a barbiturate that can be used to induce sleep. Once again, tolerance to it is usually developed in a short time: the Physicians Desk Reference recommends its use for only fourteen days.

At the same time, Doris Francis continued to make her regular and quite frequent visits as a patient to Dr. Albert in order to receive rather large quantities of Preludin and Tuinal pills for her ostensible weight loss needs. Dr. Albert prescribed these drugs even though Ms. Francis was hospitalized three times from January to March 1979—once for a Tuinal overdose, once for major surgery, and once for psychiatric treatment. His examinations of Ms. Francis were cursory at best, and his medical advice and supervision were almost non-existent.

In April and May of 1979, the Francises met with local law enforcement officers and Drug Enforcement Administration agents to discuss the Francises' cooperation in an investigation into local drug activities. The Francises agreed to cooperate, and on May 14, 1979, they began their part of the investigation by wearing electronic transmission equipment to their meetings with Dr. Albert and Cleveland. The DEA agents monitored the transmissions, which revealed the full details of the drug trading arrangement.[4] Dr. Albert and Cleveland prescribed, as before, large quantities of Preludin and Tuinal in return for a diverse assortment of merchandise—again, without adequate medical examination or supervision. Several of these visits were not recorded in Dr. Albert's medical files, and most of them were consummated by the delivery of drug prescriptions using fictitious names, names which Dr. Albert admitted having requested from the Francises.

In our view, as in the jury's, this evidence reveals without doubt that Dr. Albert conspired, with at least two others,[5] to dispense Schedule II controlled substances "not in the course of professional practice and not for a legitimate medical purpose." As the government's eminently believable expert testimony showed, sound medical practice would not permit the prescription of Preludin and Tuinal in the quantity, frequency, or manner in which Dr. Albert administered them. Therefore, we must disagree with the trial court's grant of the motion for acquittal.

III. Object of the Conspiracy

Dr. Albert also claims that the conspiracy conviction cannot stand because the object of the alleged conspiracy was improperly defined. This argument proceeds in several different disguises, but we find them all to be transparent and the argument to be correspondingly without merit. In essence, Dr. Albert argues that laypersons such as the Francises cannot conspire to *dispense* drugs illegally, since the law against dispensing applies only to medical practitioners. *See* 21 U.S.C. § 802(10) (1981); 21 C.F.R. § 1306.04(a)(19).[6]

The essence of Dr. Albert's argument misses the point that "[a] person may be guilty of conspiring, although incapable of committing the substantive offense." *United States v. Rabinowich,* 238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915). Thus, the Francises need not themselves be able to dispense drugs. Rather, they must

4. These transmissions were recorded by the DEA agents and presented at trial as exhibits for the government. Several telephone calls between the Francises and Cleveland were similarly recorded and presented at trial.

5. In addition to the evidence of the Francises' conspiratorial participation, there is somewhat weaker evidence showing the participation of Beverly Hannah, one of Cleveland's employees. Ms. Hannah worked as Cleveland's medical receptionist from the time Doris Francis first began to visit Dr. Albert until early in 1979. During this time, she occasionally disbursed the drugs that Dr. Albert had illegally prescribed. She often relayed telephone messages to Cleveland concerning the trading arrangement. And in a recorded May 16, 1979 tele-

phone conversation, she spoke knowledgeably of the arrangement and even seemed to direct Herman Francis' conduct for the May 16 trade. This evidence could easily support the Francises' testimony that Ms. Hannah knew of the conspiracy and voluntarily participated in it. Proof of her role, however, is not crucial in light of the overwhelming proof of the Francises' conspiratorial participation.

6. Dr. Albert concedes that the Francises and Beverly Hannah could conspire to *distribute* drugs illegally; however, as Dr. Albert notes, the government did not indict him for conspiring to distribute. *See United States v. Harrison,* 628 F.2d 929 (5th Cir. 1980) (distinguishing between dispensing and distributing).

only have knowingly "participate[d] in a conspiracy with Dr. Albert, a licensed physician, to dispense controlled substances in violation of 21 U.S.C. § 841(a)(1)." *United States v. Hicks*, 529 F.2d 841, 844 (5th Cir. 1976). This the evidence shows. *See* part II, *supra.*

■■ Accordingly, we find no error in the indictment's failure to allege that the Francises were dispensers. The indictment did allege that Dr. Albert was a dispenser and the Francises were coconspirators; this is all that a charge of conspiracy to dispense requires. Likewise, the indictment gave Dr. Albert notice of the charge against him—a conspiracy whose object was to dispense controlled substances unlawfully. A conspiracy to dispense simply does not depend on the coconspirators' ability to dispense or distribute the drugs beyond the physician's initial dispensation, and the indictment need not allege it.[7] Finally, the jury instruction on conspiracy adequately conveyed the requirement that the coconspirators must know of the conspiracy's unlawful object. The instruction required the jury to find that Dr. Albert and the Francises "came to a mutual understanding to try to establish a common and unlawful plan as charged in the Indictment," and the indictment in turn charged a conspiratorial plan to dispense drugs unlawfully. Thus, the jury properly had to find that the Francises knowingly conspired with a medical practitioner to dispense drugs not in the course of professional practice and not for a legitimate medical purpose. As shown above, the evidence clearly supports such a finding. We therefore reverse the trial court's grant of the motion for acquittal and reinstate the verdict of the jury.

REVERSED.

---

**7.** And the government need not prove it at trial. Thus, the government may use evidence of the coconspirators' known redistribution of the drugs to show that Dr. Albert did not prescribe the drugs in the course of professional practice and for a legitimate medical purpose, but such evidence goes to measure Dr. Albert's dispensation, not to prove the Francises'.