Wylene WATSON, Plaintiff-Appellant,

v.

NATIONAL LINEN SERVICE, Defendant-Appellee.

No. 81–5658.

United States Court of Appeals, Eleventh Circuit.

Sept. 20, 1982.

Williams & Milton, Morris W. Milton, St. Petersburg, Fla., for plaintiff-appellant.

Robert J. Martin, Jr., Charles K. Howard, Atlanta, Ga., for defendant-appellee.

Before WISDOM *, RONEY and HATCHETT, Circuit Judges.

PER CURIAM:

Wylene Watson appeals a verdict exonerating National Linen Service (National) of violating Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., in an action alleging (1) denial of promotion, (2) improper discharge, and (3) refusal to rehire. Because we find the factual findings of the district court clearly erroneous, we reverse and remand.

Wylene Watson, a black female, is an employee of the National Linen Service in Tampa, Florida. She was employed in the laundry department, but her ambition was to become a route operator. Route operators are truck drivers who deliver clean linen to National's customers, pick up soiled linen for return to the plant, and take orders for future deliveries. The Teamsters Union, Local 79, represents the route operators. Watson was a member of Local 218, Laundry, Dry Cleaning and Dye House Workers Union, which represented National's laundry department workers.

National's hiring policies required the company to post a bid sheet in the plant to fill route operator vacancies. By contract, Teamsters Union members had a preference for bidding for a route operator position. If no eligible Teamster Union member bid on the position, National would open bidding to others. Preference was given to National employees over all other applicants. As between two competing National employees, the company based its choice for promotion on merit, rather than seniority.

In July, 1976, Watson applied for a route operator position but was not selected.

---

* Honorable John Minor Wisdom, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

John Jeffcott, a white male, also applied for this position. This vacancy will hereinafter be referred to as the July vacancy. According to National hiring policies, a non-Teamster applicant must file a separate application for each posted vacancy. Watson contends that although she and Jeffcott allegedly were the finalists for the July position, neither was hired. She further contends that although neither she nor Jeffcott were applicants for the August vacancy, National hired Jeffcott and failed to consider her. National contends, however, that it received applications for the route operator position in July, and narrowed the eleven applicants down to Watson and Jeffcott. National asserts that it selected Jeffcott because he received a more favorable recommendation from his supervisor than did Watson.

▮ Although the company alleged that Watson and Jeffcott were finalists for the July vacancy, the record clearly shows that National selected a black male who had worked as a part-time route operator. When the company advertised a vacancy for an "extra route operator" position in August, 1976, Watson applied by signing the bid sheet. Because bidding was restricted to Teamsters, National struck Watson's name and that of another employee from the bid sheet. Non-Teamsters could apply only if no Teamster bid. A third employee, a non-Teamster, voluntarily removed his name from the sheet. On August 26, 1976, unexpectedly and without explanation, National announced Jeffcott's selection.[1] Watson then filed a complaint with the Tampa Office of Human Relations, which commenced an investigation.

On February 2, 1977, another route operator position became available. Watson applied and was selected. National discharged her, however, on February 23, 1977, for allegedly improperly servicing a route.

National alleged that the dismissal was due to Watson's inability to throw bags of soiled linen onto the truck roof.

The district court determined (1) that National selected Jeffcott to fill the July vacancy because of a more favorable recommendation by his supervisor; (2) that Watson filed her EEOC complaint within the 180 day statutory period; (3) that Watson was discharged for a legitimate business reason, her inability to throw bags onto the roof of the truck; and (4) that National's refusal to rehire Watson was justified because of her poor work history. We must decide whether the district court erred in these findings and conclusions. Because of our view of the record, we need only consider whether Watson suffered an act of discrimination on the selection issue.

The district court's pertinent findings of fact on the issue of selection are:

4. In July, 1976, Plaintiff [Watson] applied in writing for a position as a "route operator." John Jeffcott, a white male and employee of the Defendant and nine individuals who were not then employed by the Defendant also applied for the position.

a. Pursuant to a contract between the Teamsters Union and the Defendant, bidding on a position as a route operator is initially restricted to persons who are members of the Teamsters Union. In July, 1976, Plaintiff was not a member of the Teamsters Union; instead she belonged to Local 218 Laundry, Dry Cleaning and Dye House Workers.

b. Where, as here, a route operator's job is not filled by a member of the Teamsters Union, a notice of vacancy is posted in the laundry areas of the plant.

c. Among non-Teamster applicants, Defendant gives preference in hiring to its own employees. A number of factors are considered by Defendant in selecting

---

1. The district court's determination that Watson did not become aware of the alleged discriminatory failure to promote until August 31, 1976, is supported by the record. Thus, the determination that a reasonably prudent person would not have discovered the claim until after August 31, 1976, is proper. Under this analysis, the filings of the EEOC complaints on February 23 and 25, 1977, were timely. See *Nilsen v. City of Moss Point, Mississippi*, 621 F.2d 117, 121 (5th Cir. 1980); *Dumas v. Town of Mount Vernon*, 612 F.2d 974, 978 (5th Cir. 1980); *Hamilton v. Motors Corp.*, 606 F.2d 576, 579 (5th Cir. 1979).

among employee-applicants, and seniority is not determinative.

5. Defendant's service supervisor, Walt Hammock, screened the eleven applications for the route operator position and narrowed the field to Plaintiff and Jeffcott. Hammock interviewed both applicants and selected Jeffcott because he had received a positive recommendation from his supervisor while Plaintiff's supervisor had made negative comments concerning her job performance.

6. Defendant awarded the route operator's position to Jeffcott on August 26, 1976. Plaintiff did not become aware that Jeffcott had been formally selected until August 31, 1976.

 Under rule 52, Fed.R.Civ.P., the findings of fact of a district court in a Title VII action are weighed against the clearly erroneous standard. *Pullman-Standard v. Swint*, —— U.S. ——, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Under this standard, the findings of fact of a district court are not to be rejected unless the reviewing court is left with the definite and firm impression that a mistake has been made. *Wright v. Western Electric Co.*, 664 F.2d 959 (5th Cir. 1981). We find the factual findings of the trial court regarding selection to be clearly erroneous under the *Pullman-Standard* test. This court, upon review of the record, is left with a definite and firm impression that a mistake has been made.

The district court found that Jeffcott, Watson, and nine other non-National employees applied for the route operator position in July. The selection process narrowed the candidates to Jeffcott and Watson. The court further found that National hired Jeffcott for the July position but announced his selection in August, 1976. This finding is clearly erroneous. The record unequivocally establishes that National neither hired Jeffcott nor Watson for the full-time route operator position for which they applied in July, 1976. In fact, National's Tampa manager, Jack Trotter, testified

that the company hired Gerald Silver, an extra route operator, for the July vacancy. Trotter also admitted that the only application filed by Jeffcott was for the July vacancy for which Silver was hired. Trotter further testified that National's equal employment opportunity records, which reflected that National hired Jeffcott for the July vacancy, were in error because the company hired Silver for that position.

Other documentary evidence and testimony also contradicted the court's findings of fact regarding the selection process. Trotter's testimony shows that after Jeffcott was selected, the bid sheet posted on August 24, 1976, was marked "route assigned to John Jeffcott." Such a notation indicates that Jeffcott was employed for the "extra route operator" job advertised in August, rather than the regular full-time route operator position advertised in July.

Furthermore, National employee Ben Jones, who handled personnel matters, testified (1) that applications were taken only after a job notice was posted, and (2) that persons seeking promotion or employment must make new applications for each job notice posted. National's treatment of Watson's applications confirms this testimony. The company required her to submit a separate application for each vacancy. In summary, the record shows that despite National's contention that Watson and Jeffcott were finalists for the July vacancy, it hired neither for that position. The record also shows that although Jeffcott never applied for the August vacancy, National hired him for that job, and failed to consider Watson (who attempted to apply) or anyone else, for that position.

 It appears that National has offered no explanation for hiring Jeffcott, rather than Watson, in July or August, 1976.[2] This is of particular legal significance in light of the rules established in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In *Burdine*, the Court clarified the

2. Since Jeffcott did not possess Teamsters bargaining unit seniority, he was ineligible to sign

bid sheets for the July and August vacancies.

order of proof in civil rights cases. 450 U.S. at 253, 101 S.Ct. at 1093. The burden of persuasion remains with the plaintiff. Once a prima facie case is established, however, the burden shifts to the defendant to set forth a nondiscriminatory reason for the plaintiff's rejection. *Wright v. Western Electric Co.*, 664 F.2d 959, 962 (5th Cir. 1981). If the defendant satisfies the burden of production, the presumption of discrimination raised by the prima facie case is rebutted. 664 F.2d at 963. At this point, plaintiff must demonstrate by a preponderance of the evidence that the reasons proffered by the defendant for rejecting the plaintiff are a mere pretext for accomplishing a racially discriminatory purpose. 664 F.2d at 963–64.

In this case, the district court assumed that Watson had made out a prima facie case. The court concluded, however, that National had articulated a reasonable nondiscriminatory purpose for selecting Jeffcott, i.e., Jeffcott's superior rating. The court predicated these conclusions, however, on the now rejected assumption that Jeffcott was properly selected for the full-time route operator position for which he and Watson applied in July. Thus, on remand, the district court will be confronted with Watson's prima facie case absent a sound articulated reason for Watson's rejection.

■ Our review of the record reveals that considerable confusion surrounds personnel procedures at National's Tampa facility. As illustrated by this case, National's policies, which it apparently neither followed nor communicated to its employees, changed from day to day. The district court did not make findings in this area. The failure to establish "fixed or reasonably objective standards and procedures for hiring" is a discriminatory practice. *Brown v. Gaston Co. Dyeing Machine Co.*, 457 F.2d 1377, 1382 (4th Cir. 1972); *United States v. Bethlehem Steel Corp.*, 446 F.2d 652, 655 (2d Cir. 1972). The failure to follow objective standards could require reversal in this case if timely presented to and considered by the trial court. *Robbins v. White-Wilson Medical Clinic, Inc.*, 660 F.2d 1064, 1067 (5th Cir.

1981); *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1385 (5th Cir. 1978), *cert. denied*, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 345 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978).

In light of our disposition on the selection issue, we need not consider whether the discharge or the failure to rehire constituted discriminatory practices. Accordingly, the judgment is reversed, and the case remanded for findings consistent with this opinion and for consideration of the propriety of attorneys fees.

REVERSED and REMANDED.