[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 04-12042 & 04-13262

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 16, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 00-07327 CV-DMM

EMMANUEL JOSEPH,

Plaintiff-Appellee,

versus

PUBLIX SUPER MARKETS, INC.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(September 16, 2005)

Before TJOFLAT, PRYOR and ALARCÓN*, Circuit Judges.

PER CURIAM:

Publix Super Markets, Inc. ("Publix") appeals from the denial of its motion

for judgment as a matter of law pursuant to Rule 50(b)(2)(B) of the Federal Rules

of Civil Procedure[1], and the final judgment entered by the District Court. The jury found that Emmanuel Joseph's race and color were substantial or motivating factors in denying him a transfer to a higher volume store that would increase his compensation. Publix also seeks reversal of the orders granting back pay and front pay, attorney's fees and costs, as well as prejudgment interest.

Publix contends that the evidence presented at trial was not legally sufficient for a reasonable jury to find that Mr. Joseph was not transferred to a higher volume store because of his race. Publix also seeks reversal of the District Court's final judgment based on the prejudicial impact of its erroneous evidentiary rulings.

We affirm the order denying the motion for judgment as a matter of law

---

[1] Fed. R. Civ. P 50(b) states:
> Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment--and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:
> (1) if a verdict was returned:
>   (A) allow the judgment to stand,
>   (B) order a new trial, or
>   ©) direct entry of judgment as a matter of law; or
> (2) if no verdict was returned:
>   (A) order a new trial, or
>  (B) direct entry of judgment as a matter of law.

2

because we conclude that a reasonable jury could have found, based on sufficient relevant and admissible evidence, that Publix discriminated against him because he is an African-American. We reverse the District Court's final judgment and remand for a new trial, however, because it abused its discretion in admitting evidence whose prejudicial effect substantially outweighed its probative value.

I

Mr. Joseph was promoted to the position of produce manager for Publix in November 1993. He was assigned to a "no-chart store." Publix rates its stores on sales volume and determined the monetary bonuses a manager was eligible to receive on the store's earnings and profitability. No-Chart Stores were stores that had less than $20,000 in sales volume. Category C Stores were stores that had between $20,000 and $40,000 in sales volume. Category A stores were stores that had over $80,000 in sales volume.

Mr. Joseph filed this action in the District Court on December 8, 2000 pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 20000 *et seq.*, and the Civil Rights Act of 1871, 42 U.S.C. § 1981. He alleged that he had been repeatedly denied a transfer to a Category A Store because of his race and color. In his complaint he requested compensatory damages, payment for emotional distress and mental anguish, back pay and front pay, prejudgment

interest, as well as attorney's fees and costs.

Prior to the filing of this action, the Equal Employment Opportunities Commission ("EEOC") filed a claim against Publix for pattern and practice discrimination. The EEOC claim was settled. Over Publix's objection, Mr. Joseph offered into evidence a document referred to at trial as the "Kemp Notice." It was written by Mr. Howard Jenkins, Publix's Chief Executive Officer. The Kemp Notice summarized the terms and conditions of the settlement agreement.

The district court allowed Mr. Joseph to enter the following quotation from Mr. Howard's letter into evidence:

> So, as the EEOC investigation progressed, the EEOC focused upon the rate of promotions of blacks from full-time employment into retail management jobs. Based upon their analyses, EEOC contended that in some years, and in some locations, promotions of full time black associates to or within management lagged behind the rate of promotion of non-black associates.

At trial, Mr. Joseph testified that he overheard former Publix district manager Richard Cabel refer to Mr. Joseph as a "nigger." Specifically, Mr. Joseph testified that when he asked Mr. Cabel about a transfer to a new store, his reaction was "this nigger keep on bugging them about a promotion and he will never amount to be nothing." Publix objected to this testimony on the grounds that it was hearsay, elicited by someone who was not a decision maker. Mr. Cabel was Mr.

4

Joseph's district manager in 1992 or 1993. Mr. Cabel retired from working for Publix prior to the rejection of Mr. Joseph's requests for a transfer at issue in this case.

In response to a special verdict form, the jury found by a preponderance of the evidence that race was a substantial and motivating factor in the denial of Mr. Joseph's request for a transfer to a higher volume store. The jury did not award Mr. Joseph any damages for emotional pain and mental anguish. The District Court awarded Mr. Joseph back and front pay, attorney's fees and costs, as well as prejudgment interest.

Publix has timely appealed the final judgment of the District Court. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

II

We first consider Publix's contention that the District Court erred in denying its motion for judgment as a matter of law. Were we to agree with Publix regarding this issue, we would be required to reverse the judgment and instruct the District Court to enter a final judgment in favor of Publix without deciding whether it erred in its evidentiary rulings and in its award of back pay, front pay, attorney's fees and costs, as well as prejudgment interest.

Publix contends, based on discrete theories, that the District Court erred in

5

denying its motion for judgment as a matter of law. First, it argues that Mr. Joseph offered evidence of job discrimination based on a pattern and practice instead of an individual disparate discriminatory treatment claim. Second, Publix maintains that Mr. Joseph failed to present sufficient evidence to establish a prima facie case of individual employment discrimination for failure to transfer him to a store where he would receive higher pay. Finally, Publix asserts that Mr. Joseph failed to demonstrate that its reasons for failing to transfer Mr. Joseph were pretextual.

A

Publix contends that "[w]ith the court's approval, Plaintiff tried a pattern-and-practice case, all but ignoring *his own individual claim*." Appellant's Initial Brief at 27 n.10 (emphasis added). Publix presented a similar contention in attacking the allegations of the complaint in its unsuccessful motion for summary judgment.

Mr. Joseph alleged in his complaint that he was denied a transfer to a Category A Store based on his race and color. At trial, he presented evidence that his repeated requests for a transfer were not granted, notwithstanding the fact that he had more experience and was better qualified than non-African-Americans who were transferred to Category A Stores as produce managers.

Publix appears to contend that the fact that Mr. Joseph presented the

6

testimony of three other employees to demonstrate that Publix had a pattern and practice of discriminating against African-Americans converted his individual disparate treatment claim into a disparate impact claim. We disagree.

Pattern and practice evidence is admissible to demonstrate that an employer's employment decision conformed to a general policy of discrimination against African-Americans and that "the presumptively valid reasons for [an employee's] rejection were in fact a coverup for a racially discriminatory decision." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973). As we explain below, Mr. Joseph presented sufficient evidence to persuade a reasonable jury that his requests for a transfer were denied because of his race and color. Evidence of Publix's general policy and practice with respect to requests for a transfer to Category A Stores was admissible to demonstrate that Publix's reasons for denying Mr. Joseph's requests were pretextual. Publix has failed to demonstrate that Mr. Joseph abandoned his disparate treatment claim by offering evidence of Publix's discriminatory pattern and practice to rebut Publix's evidence of a legitimate business reason for declining to transfer Mr. Joseph.

B

Publix further maintains that Mr. Joseph failed to present sufficient evidence to demonstrate a prima facie case of employment discrimination of

7

disparate treatment because of his race and color. In their presentations to this Court, both parties have ignored the rule announced in *United States Postal Service Board of Governors v. Aikins*, 460 U.S. 711 (1983), that the question whether a plaintiff has failed to establish a prima facie case is not relevant "when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection[.] [T]he factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Douglas* presumption drops from the case." *Id.* at 714-15 (internal quotations and footnote omitted); *see also Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004) (holding that, in a suit brought under the Americans with Disabilities Act, "[a]fter a trial on the merits, an appeals court should not revisit whether the plaintiff established a prima facie case. . . . The only relevant question becomes whether the [employee's] termination was motivated by her disability.").

## C

Thus, in a disparate treatment case fully tried on the merits, our review of the validity of a judgment as a matter of law is limited to the question whether the plaintiff presented sufficient evidence to prove each element of his or her claim.

*Collado v. United Parcel Service Co.*, No. 04-11297, 2005 U.S. App. LEXIS 15850, at \*18 (11th Cir. August 2, 2005). Publix maintains that the district court erred in denying his motion for judgment as a matter of law because Mr. Joseph failed to present sufficient evidence to persuade a reasonable jury that it failed to transfer Mr. Joseph to a Category A Store because of his race and color.

After the jury returned its verdict, Publix renewed its motion for judgment as a matter of law pursuant to Rule 50(b)(2)(B). The District Court denied the motion on February 12, 2003. A judgment as a matter of law may be issued by a district court if "there is no legally sufficient evidentiary basis for a reasonable jury" to find for the non-moving party or any element of the cause of action. Fed. R. Civ. P. 50(a)(1).

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.

Fed. R. Civ. P. 50(b).

> A district court may enter judgment as a matter of law if a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find in favor of that party on that issue. When considering such a motion, the court must evaluate all of the evidence, together with any logical inferences therefrom, in the lights most favorable to the nonmoving party.

9

*Carter v. DecisionOne Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997).

In this matter, the District Court correctly instructed the jury regarding the elements of a Title VII claim. Jury Instruction No. 6 reads as follows:

> In this case the Plaintiff makes a claim under the Federal Civil Rights statutes that prohibit employers from discriminating against employees in the terms and conditions of their employment because of the employee's race.
>
> More specifically, the Plaintiff claims that he was denied a transfer to a higher volume store by the Defendant because of the Plaintiff's race.
>
> The Defendant denies that the Plaintiff was discriminated against in any way and asserts that the Plaintiff was transferred to a higher volume store and was offered a second transfer to an even higher volume store.
>
> In order to prevail on this claim, the Plaintiff must prove each of the following facts by a preponderance of the evidence:
>
> First: That the Plaintiff was denied a transfer to a higher volume store by the Defendant; and
>
> Second: That the Plaintiff's race was a substantial or motivating factor that prompted the Defendant to take that action.

In *Collado,* this Court noted that the first step of the *McDonnell-Douglas* burden-shifting framework of a prima facie claim of employment discrimination includes components that are not elements of a Title VII claim. *Collado*, 2005 U.S.

10

App. LEXIS 15850, at *28. "At the end of a trial . . . the question whether the plaintiff properly made out a prima facie case . . . is no longer relevant." *Id.* (citation and quotation marks omitted). This rule "serves as a bar, prevents a look back, where a component of the prima facie case that is not an element of the claim is concerned." *Id.* In *Collado*, this Court illustrated the difference between the circumstantial evidence – evidence that creates a rebuttable presumption of discriminatory motive under *McDonnell-Douglas* – and the elements of a Title VII claim, as follows:

> An example that comes to mind is a Title VII discriminatory failure to promote claim. The components of the prima facie case are: (1) that the plaintiff is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted. *Combs*, 106 F.3d at 1539 n.11. The fourth component, the one requiring outside-the-class comparators, is not an element of the claim itself. Once a district court has denied a Rule 50(a) motion for failure to show a prima facie case, neither that court nor this one may conclude that judgment as a matter of law should be granted under Rule 50(b) solely because no outside-the-class comparators were shown. Although the absence of comparators may be relevant to whether the plaintiff has proven that his failure to be promoted was the result of discrimination, it is not necessarily a claim-killing fact at the post-Rule 50(b) stage. Difficult as it might be to prove, a promotion could be denied for discriminatory reasons even though no one outside the protected class was promoted – even though

11

there were no comparators and therefore no prima facie case.

*Id.* at \*29-30.

Publix contends that Mr. Joseph failed to identify "a specific position that he was denied as a result of any alleged discrimination." Appellant's Initial Brief at 31. Clearly, if a plaintiff does not request a transfer to a vacant position, he or she cannot demonstrate that the failure to transfer was based on race or color. "Unless the individual plaintiff can point to some specific instance of discrimination, there is no wrong for the court to remedy." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131 (11th Cir. 1984).

Mr. Joseph presented evidence that would support an inference that non-African-American's who had less experience than he had as a produce manager were transferred to Category A. Stores. He also presented evidence that no African-American was transferred to serve as a produce manager in a Category A Store until after he filed a complaint with the EEOC. Because Publix did not publish a notice of available positions for produce manager, however, Mr. Joseph could not identify each specific transfer he was denied as a result of racial discrimination.

Tanya Piniero Brown was called as witness by Mr. Joseph. She testified that

12

she was a human resources investigator for Publix. She stated that between 1993 and 1997, Publix did not publish a notice to its employees when vacancies in produce manager positions in existing stores became available. Ms. Brown also stated that Publix did not have a testing process for transfers to higher volume stores. She further testified that the only African-American transferred to a produce manager position at a high volume store was Albert Brown. Mr. Brown was transferred in March 1999, after Mr. Joseph filed a complaint with the EEOC in November 1998 alleging discriminatory treatment by Publix against African-Americans because of their race and color. Prior to Mr. Brown's transfer to a Category A store, no African-American produce manager had served as such in a Category A Store.

Mr. Joseph testified that he trained Randy Quinn as a produce manager. Mr. Quinn was thereafter transferred to Store 432, a Category A Store, while Mr. Joseph was transferred to a Category C Store. Other white employees who were serving as produce clerks received transfers to higher volume stores while Mr. Joseph was passed over.

After Mr. Joseph filed a claim of discriminatory treatment with the EEOC in November 1998, he was offered a transfer to Store 267, a Category A Store. Mr. Joseph requested time to speak to his attorney and his wife before he could make a

decision. He was given twenty minutes to do so. Mr. Joseph was not able to contact his attorney. He did contact the produce manager at Store 267 to find out the volume of business in the produce department. Mr. Joseph was informed that the volume was good but the bonus he would receive was not much different than he was receiving in his present position at Store 114. Mr. Joseph was also told that in about five or six months Publix was going to open a new store about two miles away which would have a negative impact on the sales volume at Store 267. After receiving this information, Mr. Joseph declined the transfer to Store 267. On cross-examination, Mr. Joseph stated he wanted to confer with his attorney about the transfer offer because it did not include reimbursement for his attorney's fees or compensation for all his emotional distress.

Contrary to Publix's contention, Mr. Joseph did present evidence of specific transfers to Category A Stores that he was denied before he filed his claim with the EEOC. He presented evidence that he was denied a transfer to Category A Store 90 in 1999. Publix offered evidence that it did not offer the position to Mr. Joseph because "Mr. Joseph had not expressed any interest in a transfer to district manager Glass until after the vacancy had been filled." Specifically, Mickey Glass, who had the authority to make the transfer decision, testified that before he decided who would fill the opening at Store 90, Mr. Joseph had not made a

14

transfer request. Publix did not offer any evidence to demonstrate that it posted a notice that there was a vacancy at Store 90.

Mr. Joseph also presented evidence that a vacancy at Store 70, a Category A Store, was filled in July of 1999 by Shakir Hussein. Mr. Hussein was appointed as a produce manager in 1995. Thus, he had two years less experience in that position than Mr. Joseph. A reasonable jury could have concluded that Mr. Joseph was not transferred to Category A Store 70 because of Publix's highly informal procedures for transfers to higher volume stores enabled it to engage in highly subjective and discriminatory employment decisions. "The failure to establish 'fixed or reasonably objective standards and procedures for hiring' is a discriminatory practice." *Watson v. National Linen Service,* 686 F.2d 877, 881 (11th Cir. 1982) (quoting *Brown v. Gaston County Dyeing Machine Co.,* 457 F.2d 1377, 1382 (4th Cir. 1972).

Viewing the evidence in the light most favorable to Mr. Joseph, the record shows that he repeatedly informed his Publix supervisors, orally and in writing, that he wanted a transfer to the next available position as a produce manager. Without notice of vacant positions, or an objective criteria for eligibility for a transfer to a Category A Store, it was not possible for Mr. Joseph to apply for a transfer to a specific location before it was filled.

15

In *Carmichael*, this Court held that the failure of an employer to use formal procedures for posting notice of available promotions or for determining who would be offered a promotion "can lead to racial discrimination, both because important information may be available only to whites and because such procedures place no check on individual biases." *Carmichael*, 738 F.2d at 1133. This Court also noted in *Carmichael* that "when there is not formal notice of the job's availability, the plaintiff may have no means within his own knowledge of showing whether the employer considered him or not." *Id.* We are persuaded that the principles announced in this Court's Title VII jurisprudence concerning hiring and promotions also requires employers to post adequate notice of vacant positions that are available for lateral transfer to better paying jobs, and to promulgate objective standards for an employer to determine his or her eligibility and ranking in order to provide an employee with access to facts that may demonstrate a discriminatory animus. Because Publix failed to post notice of vacancies for produce managers in higher volume stores, Mr. Joseph was not required to demonstrate that he asked for a transfer "when he did not know about and when there was no formal mechanism for expressing his interest." *Id.* at 1132-33.

Mr. Joseph presented evidence at trial that he had positive performance

16

reviews as a produce manager, that he was equally, if not more, qualified than the white employees that were promoted to Category A Stores over him, and that three other black produce managers with similar qualifications to Mr. Joseph had also been denied transfers to Category A Stores.  Mr. Joseph also submitted evidence that in the twenty-year period prior to the date he filed his claim, Publix never promoted a black produce manager to a Category A Store and that it had no black store managers, district managers, regional managers or executives.

Viewed in the lights most favorable to Mr. Joseph, the evidence presented at trial of (1) the failure to post notice of vacancies in Category A Stores, (2) the failure to follow objective procedures in rating the employees who were eligible for such transfers, (3) the failure to honor Mr. Joseph's repeated requests for a transfer, and (4) the failure to offer to any African-American such a position prior to the initiation of EEOC procedures by Mr. Joseph was sufficient to persuade a reasonable jury to find that his race was a substantial or motivating factor in Publix's failure to transfer him to a Category A Store. The district court did not err in denying the motion for Rule 50(b)(2)(B) for judgment as a matter of law.

### III

Publix seeks reversal of the judgment in favor of Mr. Joseph on the ground that the district court committed prejudicial error in admitting portions of the

17

Kemp Notice in violation of 42 U.S.C. § 2000e-5(b), and also receiving evidence of racial slurs.

A district court's evidentiary rulings are reviewed under the abuse of discretion standard. *Piamba Cortes v. American Airlines,* 177 F.3d 1272, 1305-06 (11th Cir. 1999). This Court has explained that

> [w]e review a district court's ruling on the admissibility of evidence for abuse of discretion, and evidentiary rulings will be overturned only if the moving party establishes that the ruling resulted in a "substantial prejudicial effect." *Judd v. Rodman*, 105 F.3d 1339, 1341 (11th Cir.1997). When applying an abuse of discretion standard, "we must affirm unless we at least determine that the district court has made a 'clear error of judgment,' or has applied an incorrect legal standard." *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1333 (11th Cir.1996) (citation omitted).

*Id*.

42 U.S.C. §2000e-5(b) provides in part:

> If the Commission determines after [an] investigation that there is reasonable cause to believe that the charge [of unlawful employment practices] is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. *Nothing said or done during and as part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the consent of the persons concerned.*

42 U.S.C. §2000e-5(b) (emphasis added). Because the excerpted portion of the Kemp Notice clearly reiterated something "said or done" by the EEOC, it was inadmissible "as evidence in a subsequent proceeding." *See Olitsky v. Spencer Gifts, Inc.*, 842 F.2d 123, 126 (5th Cir. 1988) (reviewing plaintiff's age discrimination case brought under Title VII, and holding that Section 706(b) "clearly prohibits any use of EEOC conciliation material in subsequent litigation, even by the parties to the agency proceeding"). In light of this holding, it is unnecessary for us to determine whether the Kemp notice should not have been admitted for the additional reasons articulated by Publix.

Publix maintains that the testimony regarding Mr. Cabel's reference to Mr. Joseph as a "nigger" was not relevant because Mr. Cabel was a supervisor who retired from Publix prior to Publix's alleged discrimination against Mr. Joseph between 1996 and 1999. We agree. Because of the temporal remoteness of the racial slur, and the fact that it was uttered by a person who had no role in determining whether Mr. Joseph's requests for a transfer should be honored, the statement was not relevant to prove any element of Mr. Joseph's Title VII claim. Pursuant to Rule 402 of the Federal Rules of Evidence, "[e]vidence which is not relevant is not admissible." Furthermore, admission of the racial slur was highly prejudicial and should have been excluded under Rule 403 even if the District

19

Court concluded in the exercise of its discretion that it was relevant; the statement's "probative value, if any, was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed.R.Evid. 403.

The cumulative effect of the erroneous admission of the Kemp Notice and the racial slurs by a person who did not participate in the transfer decisions at issue in this case had a substantial prejudicial effect. The jury may have viewed Mr. Howard's recitation of the EEOC's contention of discrimination as a concession of liability to Mr. Joseph by Publix. Mr. Joseph's counsel argued to the jury that the excerpt from the Kemp Notice "confirmed the racism of [Publix]." The admission of the racial slurs may have caused the jury to infer that the decision makers at Publix were biased against African-Americans. Accordingly, we conclude that the district court abused its discretion in admitting evidence of the EEOC's contention in unrelated settlement proceedings, and allowing the jury to hear what Publix has properly characterized as noxious racial slurs. Because of the prejudicial impact of these erroneous rulings, we conclude that we must set aside the judgment. Since the judgment must fall, we also must vacate the award of back pay and front pay, attorney's fees and costs, and prejudgment interest.

For the guidance of the parties and the district court in the event of a retrial,

we address Publix's contention that the district court abused its discretion in calculating its award of back pay. The district court based its calculation of back pay on the difference between Mr. Joseph's average bonuses at low volume stores and the 1997 bonus of Chris Teague, which represented the highest bonus of any produce manager during the 1996-99 period. There is no evidence, however, that Mr. Joseph would have earned the equivalent of Mr. Teague's bonus for six consecutive years if he had not been denied a transfer. An award of back pay is designed to make a plaintiff whole, not to give the plaintiff a windfall or to punish the employer. *Franks v. Bowman Trans. Co.*, 424 U.S. 747, 763-66 (1976).

The district court also erred in awarding Mr. Joseph back pay from the onset of the limitations period for his § 1981 action and the date of the judgment. Back pay is designed to "place the injured party in the position he or she would have been in absent the discriminatory actions." *EEOC v. Smith Pontiac GMC, Inc.*, 896 F.2d 524, 529 (11th Cir. 1990) (quotations omitted). The district court should have calculated Mr. Joseph's back pay with reference to the first discriminatory act within the limitations period, rather than with reference to the onset of the limitations period.

The parties shall bear their own costs.

AFFIRMED in part, and REVERSED in part.

21