Booker T. STAFFORD, Plaintiff-Appellant,

v.

MUSCOGEE COUNTY BOARD OF EDUCATION, Its Members and Dr. Braxton Nail, Defendants-Appellees.

No. 81–7101.

United States Court of Appeals, Eleventh Circuit.

Oct. 15, 1982.

---

Before INGRAHAM *, HATCHETT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, Jr., Circuit Judge:

Booker T. Stafford ("Stafford"), a black educator in the Muscogee County School System, brought this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, *et seq.* (West 1982), and under the Civil Rights Act of 1866, 42 U.S.C.A. § 1981 (West 1981), against the Muscogee County Board of Education and Dr. Braxton A. Nail (collectively referred to herein as the "Board"). Stafford complained that he and other blacks had been discriminated against by the Board with respect to the staffing of principalships in the Muscogee County School System, and he sought both individual and class relief. The district court granted summary judgment for the Board, and Stafford appeals to this court. For the reasons set forth below, we affirm in part, reverse in part, vacate in part, and remand to the district court for further proceedings.

## I. FACTS

Stafford was hired by the Muscogee County School System in 1951 for the position of a mathematics teacher at Spencer High School. Stafford had previously taught mathematics for two years in a junior high school in Alabama. Beginning in 1953, Stafford became the chairman of the mathematics department at Spencer High School. In 1966, Stafford was promoted to the position of assistant principal at Mar-

* Honorable Joe Ingraham, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

shall High School. The following year, Stafford became the principal of Radcliffe Elementary School. He served in that capacity until April of 1971, at which time the Radcliffe Elementary School was destroyed by fire. Since that time, despite numerous applications for principalships within the Muscogee County School System, Stafford has not been placed in a principal's position. Between 1971 and the filing of this action in June of 1979, Stafford has served as administrative assistant at Spencer High School, assistant principal at Spencer High School, and assistant principal at J.D. Davis Elementary School. The compensation received by Stafford for his work in these positions was lower than the amount he would have received had he remained in the position of a principal.

The record reflects that Stafford made numerous applications for principalships within the Muscogee County School System between the fire at the Radcliffe School and September, 1977, when he applied for a position at the Georgetown Elementary School. In fact, during 1977, Stafford applied for at least five positions, including those of summer school principal, principal at the Gentian Elementary School, the Wynnton Elementary School, the Rothschild Junior High School, and the Georgetown Elementary School. Dr. Braxton A. Nail, Superintendent of the Muscogee County School District, notified Stafford that he had not been appointed to the Georgetown position in a letter dated October 7, 1977.

Later in October, 1977, Stafford began to pursue the grievance procedures established by the Board. He was accorded no relief under those proceedings. Subsequently, in March, 1978, Stafford filed a complaint with the Department of Health, Education and Welfare ("HEW") under Title VI of the Civil Rights Act of 1964. According to the affidavit of Dr. Nail, a conference was held in Washington in July, 1978, between representatives of the school district and the Department of Health, Education and Wel-

fare, and HEW concluded that the Board had refuted Stafford's allegations of discrimination.

Stafford filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 20, 1978. The EEOC issued a right-to-sue letter on March 26, 1979.

Stafford filed this suit as a class action on June 18, 1979, seeking to represent a class "composed of all black teachers and principals and other administrators who are employed, or might be employed, by defendant." Record, p. 6. Stafford charged that the Board traditionally appointed blacks only to schools which have a predominantly black enrollment and had engaged in a pattern and practice of discrimination by promoting black principals only to spots vacated by other black principals. Stafford also claimed that he personally had been the victim of discrimination with respect to the principalships for which he had applied since April, 1971. Stafford sought damages, declaratory relief, and injunctive relief for the alleged discriminatory practices.

After deposing Stafford and receiving Stafford's answers to interrogatories, the Board moved for summary judgment. Stafford originally did not respond to the motion, and the district court granted summary judgment on October 15, 1980. After obtaining new counsel, Stafford moved to vacate the judgment and submitted a memorandum of law and his affidavit. The district court granted Stafford's motion to vacate, but on reconsideration of the summary judgment motion, the district court once again entered an order granting summary judgment for the Board. The district court concluded that Stafford's Title VII claim was barred because of his failure to make a timely filing with the EEOC. The court further concluded that Stafford's claims under 42 U.S.C.A. § 1981 were barred by the statute of limitations, with the exception of the Georgetown promotion. With respect to that position, the district court concluded that there was no discrimi-

nation against Stafford in the staffing of that position. Alternatively, the district court also held that the administrative determination by HEW with respect to the Title VI claim of Stafford barred his Title VII and § 1981 claims under the doctrine of *res judicata.* The court also dismissed Stafford's claim under the Thirteenth Amendment for failure to state a claim upon which relief could be granted. Stafford does not appeal with respect to this Thirteenth Amendment claim. Finally, the district court denied certification of the alleged class. Stafford appeals.

## II. ISSUES ON APPEAL

Stafford raises five issues on appeal: (1) whether his claim under Title VII is time-barred; (2) whether his claims under 42 U.S.C.A. § 1981 are barred by the applicable statutes of limitation; (3) whether the district court properly granted summary judgment on the merits of Stafford's claim with respect to his Georgetown Elementary School application; (4) whether Stafford's claims are barred under the principle of *res judicata;* and (5) whether the district court properly declined to entertain the suit as a class action.

## III. TITLE VII TIME LIMITATIONS

Stafford raises essentially two arguments to demonstrate that his Title VII claims are not barred by the 180-day period for filing a claim of discrimination with the EEOC. First, he argues that the last act of discrimination against him occurred on June 30, 1978, when he received his contract for the 1978–79 school year. He contends that he was not reasonably aware that he would not be placed into principalships for which he had applied until that date. Second, he argues that the 180-day period should be

tolled because he pursued the grievance procedures established by the Board and because he filed a claim with HEW under Title VI. We find these arguments to be without merit.

In order to assert a claim of racial discrimination under Title VII, a claimant must file a complaint with the EEOC within 180 days after the alleged discriminatory practice occurred. 42 U.S.C.A. § 2000e–5(e) (West 1974). This 180-day period "begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred." *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 692 (5th Cir. 1982); *McWilliams v. Escambia County School Board,* 658 F.2d 326, 328 (5th Cir. 1981); *Yates v. Mobile County Personnel Board,* 658 F.2d 298, 299 (5th Cir. 1981).[1] The requirement that a claimant file "a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to sue in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Transworld Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234, 243–44 (1982). *See Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 595 (5th Cir. 1981) (en banc).

In this case, the district court granted summary judgment for the Board with respect to Stafford's Title VII claim on the ground that Stafford had failed to make a timely filing with the EEOC. In reviewing the district court's decision on summary judgment, we "must draw all inferences of fact in favor of the party opposing summary judgment, and the burden is on the moving party to demonstrate that there is no genuine issue of fact." *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d at 595; *accord, Impossible Electronics Techniques,*

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209. Although *Allen, McWilliams* and *Yates* are post-September 30, 1981, decisions of Unit B panels of the former Fifth Circuit, this court "regards the decisions as binding precedent. . . ." *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir. 1982).

*Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026 (5th Cir. 1982). After reviewing the record in this case under the above standard, we conclude that no genuine issue of fact remains regarding the question of whether Stafford has filed a timely claim with the EEOC; it is clear that he has not.

■ Stafford filed his complaint with the EEOC on December 20, 1978. Therefore, his claims under Title VII are barred if he knew or reasonably should have known of the challenged acts prior to June 23, 1978, unless he raises a valid tolling argument. Here, the record clearly reflects that Stafford knew or should have known well before June 23, 1978, that he did not receive an appointment to any of the positions for which he applied. The affidavit of Dr. Nail indicates that Stafford applied for several principalships for which vacancies opened in April, 1977, one principalship in June, 1977, and finally the Georgetown principalship which opened in September, 1977. Stafford's affidavit indicates that the positions for which he applied for the 1977–78 school year were filled during the summer of 1977. Although the record is silent on the precise date upon which these positions were filled during the summer of 1977, Stafford would reasonably have known that the positions must be filled prior to the beginning of the school year, *i.e.,* September, 1977. When he was not appointed to fill any of these positions by the beginning of the school year, but rather resumed his old position as assistant principal, he reasonably should have known that he had been denied the positions. With respect to the Georgetown principalship, which was the last position for which Stafford applied and the only one which became vacant after the beginning of the 1977–78 school year, the record reflects that the Board sent Stafford a letter on October 7, 1977, to inform him that he had not been selected for this position. Later in October, 1977, Stafford filed a grievance with the Board relating to the failure to appoint him to any of these positions.

Therefore, the record is clear that Stafford knew or reasonably should have known of the alleged discriminatory acts, *i.e.,* the failure to place him in a principalship position, well before June 23, 1978. His bare assertion to the contrary is insufficient. We conclude that Stafford failed to file a charge with the EEOC within 180 days of any of the alleged discriminatory acts at issue here.

■ Stafford also contends that the 180-day limitations period should be tolled in this case in order to save his Title VII claim. Essentially, Stafford argues that this limitations period should be tolled during the time that he was pursuing the grievance proceedings established by the Board and during the review of the Title VI claim he filed against the Board with HEW. We must reject these arguments. The pursuit of these independent remedies does not affect Stafford's duty to assert his Title VII claims within the limitations period. The Supreme Court has squarely rejected the argument that Title VII time limitations should be tolled during the pendency of contractual grievance proceedings. *Delaware State College v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 506, 66 L.Ed.2d 431 (1980); *International Union of Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 236–40, 97 S.Ct. 441, 447–449, 50 L.Ed.2d 427 (1976). Thus, Stafford's claim that his resort to the grievance procedure established by the Board would delay the running of the limitations period is clearly foreclosed.

■ Similarly, the filing of a Title VI claim does not toll the 180-day Title VII limitations period. In *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court held that the statute of limitations relating to a plaintiff's § 1981 claim was not tolled during the pendency of the review of the plaintiff's Title VII claim before the EEOC, noting that "the two remedies are truly independent." *Id.* at 466, 95 S.Ct. at 1723.

In answer to the petitioner's argument in *Johnson* that the filing of a Title VII charge would place the employer on notice of the claim of discrimination underlying the § 1981 claim as well, the Court noted that "only where there is complete identity of the causes of action will the protections suggested by petitioner necessarily exist and will the courts have an opportunity to assess the influence of the policy of repose inherent in a limitation period." *Id.* at 468 n. 14, 95 S.Ct. at 1724 n. 14. The Supreme Court in *Robbins & Myers* quoted this language from *Johnson* with approval, and suggested that the assertion of any independent claim, even if it related to the same factual circumstances, would not toll the running of the Title VII limitations period. 429 U.S. at 238, 97 S.Ct. at 448. The *Robbins & Myers* Court further noted that because Congress had expressly extended the limitations period for an additional 120 days where the claimant resorts to proceeding in a state or local agency with authority to grant or seek relief from the discriminatory practice, the negative implication arises that Congress could not have intended to allow extensions of the limitations period while a claimant pursues other independent remedies. *Id.* at 240, 97 S.Ct. at 449. Because the nature of the Title VI remedy differs significantly from that accorded by Title VII, we believe that the reasoning of *Johnson* and *Robbins & Myers* applies with equal force here. Accordingly, we conclude that the Title VII limitations period did not toll while Stafford pursued his remedy under Title VI. Finding no merit in any other argument that Stafford filed timely charges with the EEOC, we affirm the award of summary judgment with respect to the Title VII claims in favor of the Board.

**2.** Section 3–704 provides:

All suits for the enforcement of rights accruing to individuals under statutes, acts of incorporation, or by operation of law, shall be brought within 20 years after the right of action shall have accrued: Provided, however, that all suits for the recovery of wages, overtime or damages and penalties accruing under laws respecting the payment of wages

## IV. SECTION 1981 LIMITATIONS PERIOD

The district court concluded that each of Stafford's claims under § 1981 were barred by the statute of limitations, with the exception of the Georgetown principalship claim. The court made no distinction between Stafford's claims for damages and those for equitable relief.

█ In *Whatley v. Department of Education,* 673 F.2d 873 (5th Cir. 1982), the former Fifth Circuit held that Ga. Code Ann. § 3–704 (1982)[2] is the applicable statute of limitations for employment discrimination actions filed in Georgia under § 1981. Section 3–704 contains two limitations periods, a two-year period for suits for the recovery of wages, overtime or damages, and a 20-year statute for suits seeking equitable relief. The *Whatley* court concluded that § 3–704 "must be applied [to § 1981 suits] in a bifurcated manner so that an action for equitable relief is barred only after 20 years, but an action for back pay is barred after only two years." *Id.* at 877.

In this case, Stafford seeks damages, declaratory relief, and injunctive relief. With respect to his claims for declaratory and injunctive relief, the 20-year statute of § 3–704 controls. Stafford's complaint was filed in the district court on June 18, 1979, and the record discloses no acts of alleged discrimination occurring outside the 20-year limitations period. Accordingly, the judgment of the district court, insofar as it ruled that Stafford's claims for declaratory and injunctive relief were barred by the statute of limitations, must be reversed.

Stafford also seeks damages for the alleged discrimination at issue in this case.

and overtime, prior to March 20, 1943, shall be brought within two years from such date; and that all such suits for the recovery of wages, overtime or damages and penalties accruing under laws respecting the payment of wages and overtime, subsequent to March 20, 1943, shall be brought within two years after the right of action shall have accrued.

With respect to his claims for damages, the two-year period of § 3–704 applies. Therefore, any damage claims relating to discriminatory acts that occurred before June 18, 1977, are barred. The Board conceded and the district court recognized that the claim regarding the Georgetown position filled on October 7, 1977, was not barred by the statute of limitations; we discuss the Georgetown position in Part V. The Board represented both to the court below and to this court that the Georgetown position was the only position filled within the two-year period. However, that the record is silent with respect to when several other principalships (for the 1977–78 school year and for which Stafford applied in the Spring of 1977) were in fact filled, and when Stafford learned or reasonably should have learned that he had not been appointed to those positions.[3]

■■■ The limitations period for § 1981 employment discrimination cases "commences when the plaintiff knows or reasonably should know that the discriminatory act has occurred, the same point from which the Title VII 180-day limitations period runs." *McWilliams v. Escambia County School Board,* 658 F.2d at 330. Based on the limited record before us, we conclude that a genuine issue of fact remains regarding whether Stafford knew or reasonably should have known, before the crucial June 18, 1977, date, of the allegedly discriminatory acts taken by the Board in filling the principalships for which Stafford applied for the 1977–78 school year. Although the affidavit of Dr. Nail indicates that Stafford

applied for positions principal of the Gentian Elementary School and as principal of the Wynnton Elementary School, both of which vacancies opened in April, 1977, and that he applied for the Rothschild Junior High School principalship, which became vacant in June, 1977, the record is silent regarding the precise date upon which these positions were filled. Stafford's affidavit suggests that these positions were filled during the summer of 1977, and the record is silent regarding when Stafford learned that these vacancies were filled. Because claims with respect to these employment decisions would be barred only if Stafford knew or reasonably should have learned of the discriminatory acts prior to June 18, 1977, we cannot conclude that summary judgment was proper with respect to the three April and June vacancies discussed above. As we noted above, the burden is on the Board to demonstrate that no genuine issue of fact exists. *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d at 595. Based on the limited record before us, a genuine issue of fact still remains. Of course, on remand, the Board may demonstrate on the record that these claims are in fact barred. However, since we cannot so conclude on the basis of this record, we must vacate the entry of summary judgment with respect to these claims for damages under § 1981.

## V. GEORGETOWN PRINCIPALSHIP

The sole claim that the district court reviewed on the merits related to the filling of the Georgetown principalship in 1977.[4]

---

3. Stafford applied in April, 1977, for the position of principal of the summer elementary school. The record reflects that Stafford was sent a letter on April 5, 1977, by Assistant Superintendent John P. Tucker informing him that he was not selected for the position. Record p. 92. With respect to this position, summary judgment was proper, since Stafford would reasonably have known that he was not appointed to that position prior to June 18, 1977. The record is silent regarding the other positions for which Stafford applied in April and June of 1977.

4. The district court did not review any of the other employment decisions made in staffing any of the vacancies for which Stafford applied, but held that those claims were barred by the statute of limitations. As we have indicated in Part IV, *supra,* summary judgment on that basis was, at least in part, improper. However, because the district court did not review those claims on the merits in its summary judgment inquiry, we do not examine them here, but leave to the district court on remand the opportunity to review these claims on the merits.

The district court concluded that there did not exist a fact issue regarding whether Stafford had been the victim of discrimination in the staffing of the Georgetown position, finding that no discrimination was practiced upon the plaintiff in the staffing of that vacancy.

 Based on our review of the record, we conclude that the district court improperly granted summary judgment with respect to the Georgetown vacancy. Genuine issues of fact remain to be litigated at trial. The major argument asserted by the Board was that this position was staffed by an applicant with better qualifications. The affidavit of Dr. Nail indicates that the position was filled by Dr. Eric Person. Person had a seven-year certificate, four years experience as a principal, two and a half years experience as an assistant principal and eleven years total experience in public education. As of June, 1977, Stafford had a five-year certificate, approximately four years experience as a principal, seven years experience as an assistant administrator or assistant principal[5] and twenty-eight years total experience in public education.

The issue of whether Person or Stafford had comparatively better qualifications for the Georgetown principalship is a factual question to be resolved by the jury. Although Person had a seven-year certificate, the defendant conceded that such a certificate is not required in order to perform the job of principal. Moreover, viewing the qualifications of Person and Stafford as a whole, a jury might conclude that Stafford's equivalent experience as a principal and his greater experience as an assistant principal, his greater experience as a mathematics department chairman, and his much more extensive experience in public education, made Stafford more qualified for the position.

Defendants argue that in his deposition, Stafford conceded that none of the individuals placed in principalship positions were less qualified than he. However, Stafford's answer that "I couldn't tell. I couldn't say. I wouldn't know that." in response to the question of whether he could name any incidents where he felt that the individual who received the job was less qualified than he was, does not amount to a concession that the Board did not practice discrimination against him. This statement may reflect a lack of personal knowledge regarding the qualifications of those actually hired, and it leaves open the possibility that the evidence would show that Stafford was in fact more qualified than some applicants or that the qualification argument was mere pretext. In fact, the evidence in the summary judgment record does create a fact question with regard to the comparative qualifications of Stafford and the individual hired for the Georgetown position.

In sum, based on the evidence in the summary judgment record, a genuine issue of fact exists with regard to the defendants' qualifications defense.

Moreover, an issue remains with respect to whether race played an improper role in the staffing of the Georgetown position. In his deposition, Stafford stated that Dr. Nail had told him that a white principal was selected for Georgetown because there was already a black assistant principal at that school. This alleged statement is not answered or explained in Dr. Nail's affidavit. This statement at least permits an inference that Stafford was improperly excluded from the Georgetown promotion solely on the basis of his race. Although at trial the finder of fact might conclude that race played no improper role in the staffing of the Georgetown position and that no discrimination was in fact practiced, this testimony of Stafford regarding alleged statements by Dr. Nail is sufficient to create a genuine issue of fact. Hence, district court improperly awarded summary judgment on the merits of the Georgetown position.

## VI. RES JUDICATA

 As an alternative ground for granting summary judgment for the defendants,

---

5. In its answer, the Board stated that although Stafford served for a time as an administrative assistant, the renaming of that position to as- sistant principal reflected no change in job content. Record at 18.

the district court held without discussion that Stafford's Title VII and § 1981 claims were barred under the principal of res judicata because of the administrative determination by the office of Civil Rights, Department of Health, Education and Welfare, that Mr. Stafford had not been the victim of discrimination. We disagree. The only case cited by defendants in support of the res judicata holding by the district court, *Garner v. Giarrusso*, 571 F.2d 1330 (5th Cir. 1978), squarely refutes the argument that Stafford's Title VII and § 1981 claims should be barred because of the determination by HEW of his *Title VI* claim. In *Giarrusso*, the former Fifth Circuit noted that "the application of res judicata requires an identity of causes of action." 571 F.2d at 1336. In rejecting an argument that resort to a hearing before a local civil service commission on an employment discrimination claim would bar a later Title VII and § 1981 suit in federal court, the court noted that the scope of the administrative hearing was much narrower than the Title VII and § 1981 suit, and that that civil service commission was not a competent forum for the litigation of Title VII and § 1981 claims. Instructively, the court quoted the following language from the Supreme Court case of *Alexander v. Gardner-Denver County*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147 (1974):

> The legislative history of Title VII manifests that congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.

571 F.2d at 1337.

We find no basis on which to conclude that Stafford's resort to a Title VI claim before HEW would bar his Title VII and § 1981 claims. The remedies provided under Title VI differ significantly than those provided under Title VII and § 1981, and constitute a separate cause of action. Additionally, there has been no demonstration that HEW is a competent forum for the litigation of Title VII or § 1981 claims. Moreover, the record is unclear regarding the nature of the claims considered by HEW, the adequacy of notice to Stafford regarding the hearing, and the basis of the decision by HEW. In light of the congressional purpose underlying the civil rights laws as expressed in *Alexander*, and the nature of the proceedings before HEW, we conclude that the principle of res judicata is inapplicable here.

## VII. CLASS ACTION

We conclude that the district court did not abuse its discretion in denying class certification.

## VIII. CONCLUSION

For the foregoing reasons, the award of summary judgment in favor of the defendants must be

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART AND REMANDED.