**Effie MECKES, Plaintiff,**

v.

**REYNOLDS METALS COMPANY, Defendant.**

Civ. A. No. 84–AR–5123–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

March 11, 1985.

Donald W. Davis, Davis & Howland, Birmingham, Ala., for plaintiff.

C.V. Stelzenmuller, David D. Dowd, III, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

ACKER, District Judge.

Several weeks prior to trial the court denied a motion by defendant, Reynolds Metals Company (Reynolds), for summary judgment. The said motion was based on the fact that plaintiff, Effie Meckes (Meckes), did not file her administrative claim under the Age Discrimination in Employment Act (ADEA) within 180 days of the event of alleged discrimination, namely, the date upon which Reynolds assigned a young man, Craig Heuser (Heuser), to a job position to which Meckes, an employee in the protected age group, had aspired. Thereafter the court denied a request by Reynolds for a reconsideration of its said motion. When, however, the case was called for trial, and after the jury had been selected, Reynolds, at the court's suggestion, refiled its motion for summary judgment in light of the elimination, for the first time, of all ambiguity and dispute as to the actual date upon which Heuser actually performed in his new job. In her brief opposing Reynolds' earlier motion for summary judgment, Meckes had correctly stated:

... the affidavit of Meckes raises a factual issue of whether Heuser was physically occupying the new employment position as of July 1, 1982, as opposed to merely having been administratively re-

placed in that capacity for accounting and payroll purposes.

At trial, however, Meckes admitted the truth of the clear and unequivocal sworn testimony of Heuser himself that on July 1, 1982, he actually assumed and performed the job which had been sought by Meckes. Thus, despite Meckes' conclusory affidavit it is now undisputed that if an act of age discrimination against Meckes occurred, it occurred on July 1, 1982. The court takes as true Meckes' assertion that she only *discovered* the fact of Heuser's promotion on July 19, 1982. Prior to the removal of all doubt as to Heuser's promotion date there were two other undisputed pertinent facts: (1) that Meckes first filed an administrative claim of any kind of discrimination on December 29, 1982, a date which is 181 days after July 1, 1982; *and* (2) that her administrative claim was filed not with the Equal Employment Opportunity Commission (EEOC), but with the Office of Federal Contract Compliance Programs (OFCCP). Her complaint, received by OFCCP on December 29, 1982, consisted of a handwritten letter enclosing a handwritten description of alleged *sex* discrimination. It did not describe any act of alleged *age* discrimination. As she stated in her own brief:

> Admittedly, plaintiff's first charge to OFCCP did not mention her non-selection for the promotion granted to Craig Heuser.

Then, on January 5, 1983, 188 days after July 1, 1982, Meckes supplemented her administrative claim with OFCCP, mentioning for the first time Heuser's job assignment, and saying:

> I believe my qualifications are better than his and that I was blatantly discriminated against for promotion because of handicap, age and sex.

There is no evidence as to what, if anything, happened between January 5, 1983, and April 21, 1983, on Meckes' complaint, but on April 21, 1983, OFCCP wrote a letter to EEOC saying:

> Pursuant to a Memorandum of Understanding between the Office of Federal Contract Compliance Program (OFCCP)

and the Equal Employment Opportunity Commission (46 F.R. 7435, dated January 23, 1981), the enclosed complaint filed by Effie Meckes against Reynolds Metals Company is being referred to you for processing under Title VII of the Civil Rights Act of 1964, as amended.

Nowhere in this purported referral did OFCCP mention the Age Discrimination in Employment Act or any claim by Meckes of age discrimination.

On June 9, 1983, Meckes first filed a written charge with EEOC. At the bottom of her charge appear the words "Original Charge Filed April 22, 1983". Apparently April 22, 1983, is the date when her claim was received by EEOC from OFCCP. If the EEOC charge was first filed on April 22, 1983, it was filed much longer than 180 days after July 19, 1982. If it was first filed on June 9, 1983, it was filed nearly eleven months after Meckes learned of the alleged age discrimination. In any event, the EEOC charge of June 9, 1983, referred to Heuser's promotion, and said:

> I believe that I am being discriminated against because of my age ...

On June 28, 1983, OFCCP notified Meckes:

> Our investigation indicates that the contractor selected an employee who was best qualified by formal education, training and total job responsibility and involvement. Of the three people considered, the male selected was the best qualified. The evidence does not support the allegation.
>
> Based on the findings of this investigation, there was insufficient evidence to conclude that the contractor has violated its obligations under the nondiscrimination and affirmative action provisions of Executive Order 11246, as amended. Therefore, the Department's processing of this complaint is hereby concluded.

### The Failure to File with EEOC within 180 days of Discovery

■ It is to be noted that OFCCP was exercising the administrative jurisdiction delegated to it by the Secretary of Labor

by 41 C.F.R. §§ 60–1.2, 60–1.46, to investigate complaints of violations by Government contractors of the provisions of Executive Order 11246 which requires that Government contracts contain clauses guaranteeing equal employment opportunity "for all persons, without regard to race, color, religion, sex, or national origin, employed or seeking employment with Government contractors." 41 C.F.R. § 60–1.1. OFCCP has no jurisdiction over, and E.O. 11246 has no application to, *age.* Manifestly, OFCCP only referred "the enclosed complaint" to EEOC insofar as the complaint may have involved claims within EEOC's administrative jurisdiction, but OFCCP retained that aspect which could be a violation of Executive Order 11246 and the equal opportunity contract clauses, namely, the alleged sex discrimination, and rejected her sex claim on its merits on June 28, 1983.

OFCCP has never had any jurisdiction over ADEA complaints. The Memorandum of Understanding referred to by OFCCP is published at 46 F.R. 7435. *Inter alia,* it contains the following language:

> This Memorandum of Understanding between the Office of Federal Contract Compliance Programs (OFCCP) and the Equal Employment Opportunity Commission (EEOC) is being implemented to further the objectives of Congress under Section 715 of Title VII of the Civil Rights of 1964, as amended by the Equal Employment Opportunity Act of 1972; of Executive Order 12067, 43 F.R. 28967; and Section 6 of Reorganization Plan no. 1 of 1978 (43 F.R. 19807).

Although conspicuous by its absence in this Memorandum is any reference to the ADEA, this absence is quickly explained by the fact that nothing in E.O. 11246 gives OFCCP any jurisdiction over age discrimination by Government contractors like Reynolds. In this regard, though reference is made to Reorganization Plan No. 1 of 1978 (U.S.C. Title 5, Appendix), only § 6 thereof is mentioned (purporting to transfer to EEOC all functions of the Equal Employment Opportunity Coordinating Council). All mention of § 2 thereof, which

purported to transfer ADEA functions from the Secretary of Labor to EEOC is, again, conspicuously absent. It is quite evident that since OFCCP had nothing to do with age discrimination matters, the Memorandum of Understanding did not either.

The Memorandum also contains the following language:

> Complaints filed with OFCCP within the jurisdiction of EEOC which OFCCP refers to EEOC shall be deemed charges filed jointly with EEOC. OFCCP shall promptly transmit all such charges to the appropriate EEOC Field Office. For the purpose of determining the timeliness of the charge under statutes administered by EEOC the date the matter was received by OFCCP shall be deemed to be the date it was received by EEOC.

■ To file a paper requires its delivery to the proper office, *Chappell v. Emco Machine Works,* 601 F.2d 1295 (5th Cir. 1979). Since OFCCP was never a proper place to file any kind of age discrimination claim, plaintiff's delivery to OFCCP of a charge of age and sex discrimination, though effective as a "filing" of her sex discrimination claim, was not a "filing" of an ADEA charge and could not constitute a "joint" filing with EEOC under the Memorandum.

■ The notion of quasi-legislation by "Memorandum of Understanding" between agencies rather than rule-making by an agency pursuant to the APA, 5 U.S.C. § 553, is derived solely from Executive Orders. The particular E.O. here applicable is E.O. 12067 (June 30, 1978), as amended by E.O. 12107 (December 28, 1978), calling for EEOC to "develop procedures with the affected agencies, including the use of memoranda of understanding, to minimize duplicative investigations" (*Ibid.,* § 1–301(c)) and to "initiate cooperative programs, including the development of memoranda of understanding between agencies, described to improve the coordination of ... enforcement" (*Ibid.,* § 1–301(i)). Of course, in reference to age discrimination,

OFCCP was not an "affected" agency so that there can be no valid "duplicative" investigation of an age discrimination matter. Nor can there be "coordination" of enforcement with respect to an age discrimination matter properly the concern of only one agency. Therefore, E.O. 12067 cannot be construed to apply to ADEA matters, because (1) OFCCP had no concern with them; (2) the E.O. did not authorize a "Memorandum of Understanding" between these two agencies relating to that subject matter; and (3) the two agencies never purported to enter into such an understanding.

An earlier version of an EEOC–OFCCP Memorandum of Understanding contained this provision:

> 10. Complaints filed with OFCCP shall be deemed charges filed with EEOC and OFCCP shall promptly transmit such charges to the appropriate EEOC District Office.

This provision was held to be valid in *Reynolds Metals Co. v. Rumsfeld*, 564 F.2d 663 (4th Cir.1977), cert. denied *Reynolds Metals Co. v. Brown*, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978), reversing a carefully reasoned lower court opinion at 407 F.Supp. 365 (E.D.Va.1976), but the Fourth Circuit was not there called upon to deal with a purported transfer from OFCCP to EEOC of a charge over which EEOC clearly had jurisdiction but over which OFCCP clearly had no concurrent jurisdiction. Therefore, *Rumsfeld* can provide no guidance in the instant fact situation.

The statute which provides the administrative timetable for an ADEA claim is 29 U.S.C. § 626. Its language at all times here pertinent provides that the charge must be filed with *EEOC.* Just as the Memorandum of Understanding nowhere mentions an ADEA claim, the statute itself nowhere mentions or suggests the possibility of filing such a claim with OFCCP. At the risk of repetition, the Memorandum of Understanding between EEOC and OFCCP, here necessarily relied upon by Meckes, does not refer to ADEA claims even by implication. Why? Because there is no basis whatsoever for assigning EEOC's responsibilities under ADEA, as they existed on December 29, 1982, to any other agency. If EEOC or OFCCP should be allowed to circumvent the clear intent of 29 U.S.C. § 626 as to where an ADEA claim is to be filed, then EEOC can enter into a Memorandum of Understanding with the Environmental Protection Agency or with the Bureau of Indian Affairs so as to permit a person claiming age discrimination to file with that agency as EEOC's surrogate or mailroom. If an *individual* claim of *sex* discrimination was erroneously but timely filed with the OFCCP, the simple fact that OFCCP has a right under Executive Order 11246 to deal with group complaints based on race, color, religion, sex or national origin, would not provide a logical reason for deeming it timely filed with EEOC. In the OFCCP documents filed by the parties here in support of and in opposition to the motion for summary judgment OFCCP clearly acknowledges these jurisdictional limitations. Only where OFCCP and EEOC have potentially overlapping or concurrent jurisdiction can a rational argument be made for deeming a filing with one as a filing with the other. No such rational argument can be made when OFCCP has no jurisdiction or connection whatsoever with Meckes' individual ADEA charge. Therefore, Meckes' purported filing of an age discrimination charge with the OFCCP was simply a nullity. It cannot be deemed filed with the EEOC, either on December 29, 1982, or on January 5, 1983. And, by any measure the filing with the EEOC on April 22, 1983, was not timely. Meckes' ADEA claim is thus barred.

Although EEOC is not a party to the suit it eloquently indicated its agreement with this court on the ineffectiveness of the filing with OFCCP by typing boldly on Meckes' EEOC complaint of June 9, 1983, the words "ORIGINAL CHARGE FILED APRIL 22, 1983". If EEOC had for one moment believed that its Memorandum of Understanding with OFCCP was intended to make December 29, 1983, or January 5, 1983, the date upon which the original

ADEA charge was deemed filed, EEOC certainly would have so noted. Instead, it noted the date when EEOC itself first received the charge, namely, April 22, 1983.

*Can a "Reverse-Chadha" Argument be Made that the Delivery to OFCCP be Given Legal Effect as a "Filing" of an ADEA Charge?*

The court now addresses an issue not raised by Meckes but one which concerns the court. Thus far the court has considered the date of filing upon the premise that EEOC was *the* only proper agency for filing an ADEA charge in December, 1982 and in January, 1983. The court is well aware, however, of the celebrated controversy as to the constitutionality of the adoption of Reorganization Plan No. 1 of 1978, arising from *Immigration & Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). See *EEOC v. Martin Industries*, 581 F.Supp. 1029 (N.D.Ala.1984). The enactment of Public Law 98–532 on October 19, 1984, retroactively ratifying and affirming Reorganization Plan No. 1 of 1978, (98 Stat. 2705; See H.R. No. 98–1104, U.S.Code Congressional and Admin.News, December 1984, p. 4428), presumably has ended this controversy. As to the constitutionality of retroactivity see *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314–316, 65 S.Ct. 1137, 1142–1143, 89 L.Ed. 1628 (1945). The argument has been made by some employers that because of *Chadha* filing a charge with EEOC was invalid.

■ Although never argued in this case by Meckes, the court has considered the possibility of a reverse *Chadha* argument, namely, that the delivery of Meckes' charge to OFCCP should be deemed a filing with the Secretary of Labor and that in view of the *Chadha* confusion, this fact should be considered a basis for equitable tolling. The flaw in any such argument, if and when made, is that the Secretary of Labor *never delegated any authority under ADEA to OFCCP*. OFCCP does not equate with the Secretary of Labor, although OFCCP is an agency within his

Department. ADEA, as originally enacted, required a "notice of intent to sue" to be filed with the Secretary of Labor. The 1978 amendments changed this notice to a "charge". Then came the Reorganization Plan No. 1 of 1978, by its terms to be effective July 1, 1979. It changed the place of filing from the Secretary of Labor to EEOC, an action which was thereafter ratified by P.L. 98–532 on October 19, 1984. ADEA § 6(a), 29 U.S.C. § 625(a), specifically authorized the Secretary of Labor to delegate his ADEA functions. Such a delegation, if undertaken, is required by the Administrative Procedure Act, 5 U.S.C. § 552(a), to be published in the Federal Register. ADEA § 7(b), 29 U.S.C. § 626(b), specifically adopted the enforcement procedures provided in sections 11(b), 16 (except for subsection (a) thereof), and 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §§ 211(b), 216, 217), and further provided that money owed under ADEA "shall be deemed to be unpaid minimum wages ... for purposes of sections 16 and 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §§ 216, 217)". The Secretary delegated his functions, except the issuance of certain regulations, the bringing of suits, the submission of an annual report to Congress, and the recommending of criminal prosecution, under the FLSA to the *Wage-Hour Division of the Department of Labor* (Rules and Regulations, USDL, Organization and Functions, 16 F.R. 8147 (August 16, 1951), not codified in CFR, 1 CCH Wage-Hour Reporter ¶ 23,030.01). It is obvious from the lack of any subsequent delegation published in the Federal Register that there was no intention to delegate to OFCCP, particularly when the form of the notices under ADEA § 8 (29 U.S.C. § 627), prescribed by USDL regulations, expressly reads:

> If you feel you have been discriminated against ... because of age, contact the:
>
> U.S. Department of Labor
> *Wage and Hour Division*

Local Address: _____

(emphasis supplied).

This language was included once more in the revised poster required to be displayed by employers after the protected age was raised from 65 to 70. Furthermore, the Annual Reports filed with Congress by the Secretary of Labor under ADEA Section 13, 29 U.S.C. § 632, in January, 1968, 1969, and 1970, without exception, state that the administrative functions of the Secretary under ADEA had been delegated to the Wage and Hour Division. See also 1969 Report of ABA Section of Labor Relations Law, p. 92. Hence, if the function of filing charges was delegated at all by the Secretary, it was delegated to the Wage and Hour Division and not to OFCCP. Thus, filing an ADEA charge with OFCCP could not have been effective even assuming *Chadha* vitiated or confused Reorganization Plan No. 1 of 1978, and even assuming that congressional ratification was not retroactive for all purposes. The court does not speak to what "might have been" if plaintiff had written her letters directly to the Secretary of Labor or to the Wage-Hour Division.

From another perspective, Meckes could not have been misled by *Chadha* into filing with OFCCP, not only because she does not claim to have been misled, but because *Chadha* had not even been decided on December 29, 1982, and there is no possibility of any detrimental reliance on her part. Consequently, the *Chadha* controversy has no bearing on the question as to the place at which Meckes was required to file her charge.

### The Failure of OFCCP to Transfer "Promptly"

In light of the foregoing, the question of whether or not OFCCP promptly transmitted Meckes' ADEA claim to EEOC is academic. Nevertheless, the court will venture a dictum. The Memorandum of Understanding upon which Meckes relies requires that "OFCCP shall *promptly* transmit all such charges to the appropri-

ate EEOC field office". (emphasis supplied). For what it is worth, the court expresses the belief that the forwarding on April 21, 1983, by OFCCP of a charge received by it on January 3, 1983, *is not prompt.*

### If, arguendo, the OFCCP filing is deemed filed with the EEOC, is it timely?

If the court is correct in holding that Meckes was required to file with EEOC itself rather than with OFCCP, the discussion which follows as to of the proper application of the statute of limitations and of the concept of "tolling" becomes *dicta.*

Meckes defends Reynolds' motion for summary judgment by asserting first, that her filing with OFCCP constituted a filing with EEOC; and second, that she did not *discover* that she had been bypassed for the job until July 19, 1982, a date which is less than 180 days prior to December 29, 1982, and less than 180 days prior to January 5, 1983. Obviously, if her filing on December 29, 1982, as supplemented on January 5, 1983, is properly deemed a claim of age discrimination filed with EEOC, *and* if the charging party *invariably* has 180 days within which to file, starting from the date when she actually discovered, or by an exercise of reasonable diligence should have discovered, the act of age discrimination, then a jury issue is presented in this case and a summary disposition would be inappropriate.

This court has already concluded that Meckes cannot jump her first hurdle because she failed to file with the EEOC until April 22, 1983, and is therefore barred by the 180 day limitation even if it runs from the date of discovery. The court now, however, concludes that Meckes faces an equally formidable second hurdle, because the court finds that the reasoning in *Baldwin County Welcome Center v. Brown,* —— U.S. ——, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984), removes from Meckes her claim of a guaranteed 180 days from the date when she allegedly discovered the facts of discrimination within which to file. When, on

January 5, 1983, Meckes supplemented her administrative claim by charging for the first time an adverse employment decision based on her age, 188 days had elapsed from the now undisputed date upon which "the alleged unlawful practice occurred", and 162 days had elapsed from her claimed date of "discovery".

The limitations statute, 29 U.S.C. § 626(d)(1), provides in pertinent part:

No civil action may be commenced by an individual under this Section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]. Such a charge shall be filed (1) within 180 days after *the alleged unlawful practice occurred.* (emphasis supplied).

It is true, of course, that in *Watson v. National Linen Service,* 686 F.2d 877 (11th Cir.1982), and in *Stafford v. Muscogee County Board of Education,* 688 F.2d 1383 (11th Cir.1982), the Eleventh Circuit has held that this 180 day period only begins to run "from the time that the complainant knows or reasonably should have known that the challenged act has occurred". This interpretation of the ADEA would, in effect, create a possible delay in the *accrual* of the ADEA cause of action where the act of discrimination goes undiscovered through no fault of the employee. It is not a true "tolling" concept, that is, if "tolling" is properly defined as forgiveness of a potential plaintiff's failure to file a claim upon which a cause of action has accrued, or, in other words, if "tolling" permits an interruption in what would otherwise be a running statute of limitations. Applied literally, *Watson* and *Stafford* would allow a complaining party to file her EEOC complaint 1180 days after an adverse employment decision based on age if it were not until 1000 days after the event, by an exercise of due diligence, that she first discovered the fact. The potential exposure by the employer to suit would be for as long as the employee lives.

Some statutes of limitations by their terms expressly recognize that the *accrual* of the particular cause of action occurs only upon the event of *discovery* by the prospective plaintiff of his cause. This is not the import of the language of 29 U.S.C. § 626(d)(1), which expressly provides for accrual upon the *occurrence* itself. In *Watson* and *Stafford,* the Eleventh Circuit, prior to *Baldwin Welcome,* understandably fashioned an extension of the accrual date by talking in terms of "equitable tolling". Prior to *Baldwin Welcome,* this reasoning was a seemingly innocuous way for preventing a discriminatee from being barred when he or she had been undeniably diligent.

Then came *Baldwin Welcome,* which severely undercuts *Watson* and *Stafford* and, in effect, overrules the Eleventh Circuit's reasoning in those cases. *Watson* and *Stafford* simply cannot be reconciled with the following holding in *Baldwin Welcome* at 104 S.Ct. 1725, *et seq:*

This is not a case in which a claimant has received inadequate notice, see *Gates v. Georgia-Pacific Corp.,* 492 F.2d 292 (CA9 1972); or where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, see *Harris v. Walgreen's Distribution Center,* 456 F.2d 588 (CA6 1972); or where the court has led the plaintiff to believe that she had done everything required of her, see *Carlile v. South Routt School District RE 3-J, 652 F.2d 981 (CA10 1981). Nor is this a case where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction. See Villasenor v. Lockheed Aircraft,* 640 F.2d 207 (CA9 1981); *Wilkerson v. Siegfried Insurance Agency, Inc.,* 621 F.2d 1042 (CA10 1980); *Leake v. University of Cincinnati,* 605 F.2d 255 (CA6 1979). *The simple fact is that Brown was told three times what she must do to preserve her claim, and she did not do it. One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.*

Brown also contends that the doctrine of equitable tolling should apply because

the Welcome Center has not demonstrated that it was prejudiced by her failure to comply with the rules. This argument is unavailing. Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.

*Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980), *"[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.* (emphasis supplied).

The earlier decision by the Eleventh Circuit in *Baldwin Welcome,* 698 F.2d 1236 (1983) rehearing den., 704 F.2d 1253 (11 Cir.1983) as to which the Supreme Court granted certiorari, is by an unpublished opinion. This court has obtained a copy of that opinion in order to understand, to the extent possible, the full import of the Supreme Court's reversal of the Eleventh Circuit. The Eleventh Circuit decision relies upon several ideas which also inhere in its decisions in *Watson* and *Stafford.* One concept is to "liberally construe" limitations provisions in civil rights cases. The same concept is restated in terms of being "generous" in interpreting limitations periods in civil rights cases. A third, and the most important concept, was stated thusly by the Eleventh Circuit in its unpublished opinion:

Brown's *diligence* in this case is sufficient to justify the district court's attention to her matter. (emphasis supplied).

It is these concepts with which the Supreme Court markedly differs with the Eleventh Circuit in its reasoning in *Baldwin Welcome* and *Watson* and *Stafford,*

and as to which the Supreme Court points a new direction.

Not only does the Supreme Court eliminate sympathy as a reason for tolling, but it now requires strict adherence to the statutory language set forth in limitations periods even in civil rights cases and requires "diligence" as a prerequisite for invoking "equitable tolling". Furthermore, the Supreme Court recognizes the distinction between the two kinds of "diligence". The first, recognized and depended upon by the Eleventh Circuit in *Watson* and *Stafford,* is the "diligence" required for ascertaining the facts giving rise to a complaint. The second kind of "diligence", not recognized by the Eleventh Circuit in *Watson* and *Stafford* but the more important form of "diligence" in light of *Baldwin Welcome,* is the "diligence" required to *pursue the cause of action.* It is this brand of "diligence" which courts now must insist upon. Giving Meckes the benefit of every doubt, she found out on July 19, 1982, that she had been discriminated against on account of her age. Yet, she did absolutely nothing about it until 162 days later. She is, of course, presumed to know the law (29 U.S.C. § 626), which unequivocally requires that she file with the EEOC within 180 days "after the alleged unlawful practice occurred". For aught appearing, during this 162 days before Meckes made any administrative charge, Reynolds was totally unaware that its employee had any complaint. Therefore, Reynolds during this 162 days was subject to the possibility of misplacing its records, including the personnel record which reflected that Heuser took his new position on July 1, 1982. The possible prejudice to Reynolds was and is obvious. Under the admitted facts it is impossible to find that Meckes was "diligent" waiting 162 days to file her complaint. If *Baldwin Welcome* says nothing else, it says Meckes must be *diligent.* She was not.

If, hypothetically, Meckes had by an exercise of diligence only discovered that Heuser was given the job 179 days after the date he actually received it, the doctrine of equitable tolling would surely come into play and would have given Meckes a

"reasonable time" within which to file her charge. "Equity" would not have required her to appear at EEOC the next day. The words "diligence" and "reasonable" have a very similar connotation. One implies the other. A "reasonable time" does not always equate with 180 days. An invariable 180 days after knowledge by the employee can be *inequitable* for the employer if it is without blame, either for the plaintiff's failure to discover or her failure to file.

A good discussion of the 180 day filing requirement in ADEA cases, but one which does not clearly address the difference between delayed accrual and tolling, is found in Schlei and Grossman, *Employment Discrimination Law*, Second Edition (1983), which addresses the issue at p. 490 as follows:

> Most courts have held that the 180/300-day filing requirement is akin to a statute of limitations, which can be tolled for equitable reasons.
>
> \*    \*    \*    \*    \*    \*
>
> The charging party must meet the burden of alleging facts which justify tolling of the period for equitable reasons.
>
> \*    \*    \*    \*    \*    \*
>
> Whether or not employees are *diligent in pursuing their rights* is a highly relevant consideration. (emphasis supplied).

[This sounds like *Baldwin Welcome*].

Both Schlei and Grossman, and the cases which they cite, recognize expressly or by implication the distinction between "diligence in ascertaining the facts" and "diligence *in pursuing rights*." Most of the examples given to justify "tolling" involve misconduct by the employer. In the 1983 supplement to Schlei and Grossman at p. 54 the commentators say:

> ... the courts have continued to evince a reluctance to toll the filing period, absent misconduct or bad faith attributable to the defendant.

There is not the slightest evidence here that Reynolds was guilty of misconduct or bad faith. If it had in any way misled Meckes there would, of course, be a reason for equitable tolling.

This principle of equity which requires that a plaintiff act diligently in order to be allowed to invoke equitable tolling is well stated by Hon. Sam C. Pointer, Jr., in *Rader v. United Transportation Union*, 112 L.R.R.M. 2861 (N.D.Ala.1982), as follows at p. 2863:

> In appropriate circumstances litigants must be relieved from the strictures of a limitations period, either on the basis of tolling or on other equitable principles. The time during which the union was considering his grievance—from August 29 to November 12, 1980—might, for example, be treated as a period during which the statute was tolled. Rader would not, however, be entitled to claim that he had a period of one year from the date he or his counsel learned of the union's rejection of his position—a doctrine of discovery developed by the courts where there is fraudulent concealment of a cause of action. A modified form of the discovery doctrine has been applied on equitable grounds in some cases which did not involve fraud, where the cause of action was discovered with only a very short time remaining for suit to be filed. *Here, however, many months remained for suit to be filed when plaintiff's counsel was informed of all the critical events upon which the claim is based.* (emphasis supplied).

In the Meckes situation there is not the slightest suggestion of any concealment by Reynolds, fraudulent or otherwise, and for 162 days after Meckes' *actual discovery* of the act of alleged discrimination she did absolutely nothing. It is hard to comprehend how Meckes can seek to invoke a principle of equity.

Without specific reference to *Baldwin Welcome*, but following its direction, the Eleventh Circuit on October 11, 1984, in *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483 (11th Cir.1984), dealt with an appeal from a lower court decision in which the "district court held that the equities in the case did not justify a tolling of the 180-day notification requirement and granted summary judgment to the defendants". At p. 1484. *McClinton* was an ADEA case. The Eleventh Circuit said, long after *Watson* and *Stafford*, at p. 1485:

This 180-day notification requirement is a prerequisite to an action based on the ADEA, *Templeton v. Western Union Telegraph Co.*, 607 F.2d 89, 91 (5th Cir. 1979), and *is intended to promote the speedy, informal, non-judicial resolution of discrimination claims, and to preserve evidence and records relating to the alleged discriminatory action.* *Edward v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1198–99 (5th Cir.1975).

It is now established that this notification requirement is not a jurisdictional prerequisite that deprives a court of subject matter jurisdiction, but a requirement more in the nature of a statute of limitations that is subject to equitable tolling. *Coke v. General Adjustment Bureau*, 640 F.2d 584, 595 (5th Cir.1981) (en banc). *Whether to toll this statutory period is determined on a case-by-case basis, depending on the equities of the situation.* (emphasis supplied).

Quoting from *Templeton v. Western Union Telegraph Co.*, 607 F.2d 89 (5th Cir. 1979) the Eleventh Circuit continued at p. 1485:

> ... *an employee who is aware of his ADEA rights* yet does not notify the Department of Labor [here EEOC] of his intent to sue [here his charge] within the prescribed period of time is barred from asserting a cause of action under the ADEA. (*emphasis the Eleventh Circuit's*).

*McClinton* clearly recognizes that a *person who is aware of his ADEA rights must thereafter proceed diligently.* *McClinton* follows *Baldwin Welcome* rather than *Watson* and *Stafford*. It recognizes that a crucial purpose for a limitations period is to put potential controversies to rest without unduly prejudicing the rights of those who do not know of the existence of facts giving rise to their cause of action and without unduly prejudicing the rights of prospective targets. *McClinton* adopts a stricter view of "diligence" than does *Watson* or *Stafford*, and, in this court's view, better accommodates to the new reality of *Baldwin Welcome*. If "to

toll this statutory period is [to be] determined on a case-by-case basis depending on the equities of the situation", as said in *McClinton* at p. 1485, this court finds that the equities in Meckes' particular situation strongly militate against "tolling".

In *Robinson v. City of Fairfield*, 750 F.2d 1507, (11th Cir.1985), decided on January 21, 1985, the Eleventh Circuit correctly points out that a civil rights complaint must be considered by a district court if it sets forth the nature and factual basis of the plaintiff's claim of discrimination and if it is received within the limitations period by the clerk. At p. 1507. However, *Robinson* provides no escape for Meckes. Meckes' charge did not set forth the factual basis of her claim of age discrimination until 188 days after the act of alleged discrimination occurred, and it was not filed with the appropriate agency until months thereafter. Robinson was clearly "diligent". Meckes was clearly not.

■ The limitations concept which the court finds to bar Meckes is not an easy concept to articulate, and the court may have failed to articulate it clearly. The court may be wrong, but it does not want to be misunderstood. In a nutshell, it embraces the idea implicit in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), where the Supreme Court was dealing with the statutory language of 42 U.S.C. § 2000e–5(e), identical to 29 U.S.C. § 626(d)(1) in requiring that a complaint be filed with EEOC "within 180 days after the alleged unlawful practice occurred". The gist of the opinion is found at 101 S.Ct. 505, as follows:

> Congress has decided that time limitations periods commence with the date of the "alleged unlawful employment practice." See 42 U.S.C. § 2000e–5(e). Where, as here, the only challenged employment practice occurs before the termination date, the limitations periods necessarily commence to run before that date. It should not be forgotten that time—limitations provisions themselves promoted important interests; 'the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of

protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.'

The court then turned a deaf ear to the plaintiff who mistakenly assumed that the 180 days did not begin to run until it became clear to him that the adverse employment decision was effective as to him. The idea is that where the victim of discrimination has a reasonable time from the date of his discovery within which to meet the 180 day deadline, then the 180 days is deemed to run from the date of the act of discrimination, and the Congressionally mandated accrual date is strictly applied. However, where the discovery takes place too late during the 180 day period for the victim, by reasonable diligence, to meet the strict 180 day deadline, then he is given a reasonable extension of the deadline. In Meckes' case there is no reason to give her such an extension.

### Conclusion

For the foregoing separate and several reasons, defendant's motion for summary judgment will be granted by separate order.